363 So.2d 732 (1978)
Harold G. TOLAR and Nell F. Tolar
v.
BANKERS TRUST SAVINGS & LOAN ASSOCIATION, State Farm Fire & Casualty Company, National General Insurance Company, and Citizens Bank of Columbia, Mississippi.
No. 50642.
Supreme Court of Mississippi.
September 27, 1978.
Rehearing Denied November 15, 1978.
*733 Emory E. Morgan, Columbia, for appellant.
Bacon, Smith & Jernigan, Robert B. Henderson, E. Frank Goodman, William A. Bacon, Watkins & Eager, Velia Ann Mayer, William M. Dalehite, Jr., Wise Carter Child Steen & Caraway, Jackson, for appellees.
Before SMITH, WALKER and BOWLING, JJ.
BOWLING, Justice, for the Court:
This cause originated in the Chancery Court of the First Judicial District of Hinds County. Appellee and cross-appellant, Bankers Trust Savings & Loan Association, filed its bill of complaint against State Farm Fire & Casualty Insurance Company, National General Insurance Company, the Citizens Bank of Columbia, and Harold G. Tolar and Nell F. Tolar. Later an intervention was permitted by Stuart Robinson, trustee in a deed of trust given by defendants, the Tolars, to complainant, Bankers Trust Savings & Loan Association. The purpose of the suit was to collect as mortgagee on policies of fire insurance allegedly covering the Tolar residence, and to foreclose the deed of trust and collect any balance due the complainant after any collection under the fire insurance policies.
All defendants filed cross-bills of complaint. Each insurance company contended that the other's policy covered the loss and that its policy was not in force, for the reasons hereafter set out, at the time of the fire that destroyed the Tolar's residence. The defendants, Harold G. Tolar and Nell F. Tolar contended that policies of fire insurance issued by both insurance company defendants were in force and proceeds were owed them as insureds thereunder. Citizens Bank of Columbia contended that it was entitled to payment of eighty percent of the indebtedness owed it by the Tolars; that this obligation was assumed by Bankers Trust Savings & Loan Association under a subordination agreement at the time of the original transaction.
The loan to the Tolars from Bankers Trust Savings & Loan Association was for *734 the purpose of constructing a residence on approximately 82 acres of land about seventeen miles north of Columbia, Mississippi. Citizens Bank of Columbia agreed to advance partial interim financing for the construction. There was then an agreement between Bankers Trust Savings & Loan Association and the local bank that the Bank's note and deed of trust under its loan would be subordinated to that of Bankers Trust. A condition of the subordination agreement was that the Loan Association would guarantee payment of eighty percent of any balance of the debt owed the bank.
Simultaneously, with the conclusion of the loan agreement, the Tolars purchased a policy of ordinary fire insurance in the principal amount of $16,000 from appellee National General Insurance Company. The loan transactions and the securing of the insurance policy were handled by the local manager of Bankers Trust Savings & Loan Association of Columbia. At all times, before, during and subsequent to the transactions involved in this cause, both Bankers Trust Savings & Loan Association and National General Insurance Company were wholly owned by Bankers Trust Company  the top executives being the same for all three companies. The local manager, in addition to being manager of the local office of Bankers Trust Savings & Loan Association, was the duly licensed agent for National General.
In April, 1974, the Tolar residence that had been constructed with the loan funds from Bankers Trust, was damaged by a flood from the adjacent Pearl River. The amount of this damage is rather hazy throughout the record made at the trial. Water rose inside the house approximately eighteen inches and remained there about twenty-four hours. Because of the damaged house, the Tolars temporarily moved to another residence in Columbia. From then until August, 1974, the Tolars, or certain members of the family, stayed in the damaged home for varying periods of time. During this period of time the Tolars applied for a disaster loan from the Small Business Administration. It is admitted that this was a fraudulent application. A letter was secured from an alleged expert to the effect that the home was a total loss in the amount of $35,000. The application itemized all items of furniture that were, according to the application, completely destroyed in the flood. It was alleged that the damage amounted to over $95,000. The Small Business Administration denied the Tolars' application for the loan for financial reasons, not knowing at that time that the application was fraudulent. On August 19, 1974, the residence, together with whatever was in it, was completely destroyed by fire.
On August 14, 1974, the Tolars went to the place of business operated by Cavin, the local manager for Bankers Trust and National General, for the dual purpose of talking about the loan payments which then were in default and the securing of additional insurance on the residence and contents. There was no coverage on the contents under the National General policy. Cavin agreed to wait until October to give the Tolars a chance to catch up on the house payments. He would not agree to increase the fire insurance on the property. There was a discussion, as later we will set out in more detail, regarding the securing of other insurance by the Tolars. On the same day they went to the local office of Elmo Harrison, agent for State Farm Fire & Casualty Company, for the purpose of securing additional or other fire insurance. The conversations among these people resulted in the Tolars completing an application for fire insurance on the residence in the amount of $20,000 and on the contents in the amount of $10,000. Harrison immediately issued a binder under a comprehensive dwelling policy. As a result of their discussion, the policy was to name Bankers Trust Savings & Loan Association as loss-payee mortgagee under the terms of the policy. Harrison called Cavin and verified that his company, Bankers Trust Savings & Loan Association, had a deed of trust on the property.
The trial in the chancery court was held on July 7, 1975. On December 15, 1975, the trial court rendered an opinion finding that both insurance companies had policies that were in full force and effect at the time of *735 the fire, and ordered payment to the insureds and the mortgagee. On February 28, 1977, the court withdrew its opinion and rendered another opinion on May 10, 1977. In this opinion, the chancellor held that the policy of National General had been cancelled and was not in force as to either the insureds or the mortgagee at the time of the fire. He held that the policy of State Farm was in force as to the mortgagee but that the insureds were not entitled to recover. His decree of September 12, 1977, was that the complainant was entitled to a judgment against State Farm to the extent of the coverage of $20,000. The court adjudicated that as of May 16, 1977, the debt owed the complainant was $23,296.90, with interest running at the rate of $3.75 per day.
The court found in its decree that State Farm was entitled to be subrogated to the rights of Bankers Trust Savings & Loan Association against all its debtors in the transaction. The decree held that Citizens Bank of Columbia was entitled to receive the sum of $2,450.05 under its subordination agreement with the complainant. The decree held that Harold G. Tolar and Nell F. Tolar were not entitled to recover anything from any party in the cause, and held that National General Insurance Company was not liable to either its insured or the mortgagee under its policy of insurance.
The Tolars and State Farm Fire & Casualty Company appeal; Bankers Trust Savings & Loan Association cross-appeals. Questions in the appeal simply stated are: (1) Is State Farm Fire & Casualty Company liable under its policy to the alleged insureds, the Tolars, the mortgagee, either or both? (2) Is National General Insurance Company liable under its policy of insurance to either the insureds and mortgagee, or both?

THE POLICY OF STATE FARM FIRE & CASUALTY COMPANY
State Farm contends that its policy was void ab initio because of false and fraudulent representations made at the time the application was taken and the policy binder issued. The policy which was issued subsequent to the fire had the standard provision, towit:
1. Declarations: By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreement existing between himself and this company or any of its agents relating to this insurance.
This entire policy shall be void, if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.
There can be no question but that if the Tolars induced Harrison to accept the application and issue the policy binder by fraudulent representations, the policy may be declared void by the insurer. 43 Am.Jur.2d, Insurance § 734 (1969); Casualty Reciprocal Exchange v. Wooley, 217 So.2d 632 (Miss. 1969); Coffey v. Standard Life Insurance Co., 238 Miss. 695, 120 So.2d 143 (1960). The application to the State Farm agent was made on August 14, 1974, after the house had been flooded in April of that year. During the intervening time the Tolar family had not lived in the residence as a family unit. Admittedly an application had been made by Mr. and Mrs. Tolar for a disaster loan with Small Business Administration with the application stating that the building was a total loss because of the flood. No repairs of any kind had been made. All personal property that was in the house at the time of the flood was listed as destroyed. Even though it might be said that the Tolars were only attempting to defraud the disaster area lender, it is elemental that no insurance company having that information would have written a policy of fire insurance on the house. Even Mrs. Tolar admitted knowing that the policy would not have been written had Harrison been advised of the situation regarding *736 the flooded home and the application for a loan alleging the total destruction of the house. We hold, therefore, that because of the fraudulent representations and concealments by Mr. and Mrs. Tolar, State Farm's policy was void as to them.
A different situation existed as to the mortgagee under the loss payable clause of State Farm's policy. As we hereinbefore stated, Harrison called Cavin on the same day the insurance policy binder was issued and verified that Bankers Trust Savings & Loan Association had an outstanding deed of trust on the property. Harrison agreed to place the mortgagee's name in the loss payable clause of the policy, and this was done. The policy was not issued or cancelled until after the fire occurred and after the check for the first annual premium had been received and cashed. The local agent made no inspection of the insured property.
The mortgage clause of the policy, pursuant to Mississippi Code Annotated section 83-13-9 (1972), provided that the coverage for the mortgagee "shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property... ."
At the beginning of the trial in the lower court, appellant, State Farm, recognized its exposure under the mortgage clause and tendered into court the sum of $10,937.61 as a pro-rata share of the mortgagee's claim at that time. Furthermore, at the time the policy binder was issued, the agent recognized that his policy probably would be substituted for an existing policy of another company. This was brought out by the Harrison-Cavin conversation the day the binder was issued.
Code section 83-13-9 further provides that the mortgage clause include the following:
Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgagee and of all such other securities.
We hold that State Farm is liable under the mortgage clause of its policy to the mortgagee, the only question remaining being whether the obligation is for the full amount of the policy or on a pro-rata basis with another company.

THE POLICY OF NATIONAL GENERAL INSURANCE COMPANY
The lower court erroneously held that National General Insurance Company was not liable to either the insureds or the mortgagee under its policy. As hereinbefore seen, when the original loan was made and the original fire insurance policy issued, the policy did not include coverage for contents of the residence and only covered loss in the amount of $16,000, even though the loan on the property was in the principal sum of $20,500. It is undisputed that on August 14, 1974, Mr. and Mrs. Tolar went to the office of Cavin. The doubtful question is whether or not Cavin, during the conversation, was acting for the mortgagee, the insurance company, or both. He did not say which "hat" he had on at that time. He admitted that in addition to discussing the past due mortgage payments, the Tolars made a definite request that the insurance policy be changed to give them complete coverage. This was refused by Cavin, who then admittedly told the Tolars that they were at liberty to secure this insurance elsewhere. They immediately proceeded to the office of Harrison, State Farm's local agent.
Cavin testified that after the Harrison-Cavin conversation on March 14, he notified "his company" that the National General policy should be cancelled. Admittedly, no notice was given the Tolars. The policy was not cancelled until September 4, *737 1974, when it was delivered by transmittal letter from the office of Bankers Trust Savings & Loan Association. The premium had been paid and accepted. No notice was given the mortgagee of cancellation by National General. The required mortgage clause under Code section 83-13-9 provides that upon cancellation,
[T]his policy shall continue in force for the benefit only of the mortgagee for ten (10) days after notice to the mortgagee of such cancellation and shall then cease and this company shall have the right on like notice to cancel this agreement.
The fire occurred prior to the expiration of this ten-day period, and, admittedly, without cancellation notice to the mortgagee. It is clear, therefore, that at the time of the fire the mortgage clause provision of National General's policy was in full force and effect.
The question arises as to whether or not National General's policy was in force as to the insureds, Mr. and Mrs. Tolar, at the time of the fire. We have heretofore seen that as to State Farm the Tolars clearly were guilty of fraudulent concealments and representations  which voided that policy as to them. The record is silent as to any fraud perpetrated by the Tolars as far as National General is concerned. Admittedly, they were trying to defraud the Small Business Administration by contending that the flood damage was total, when, in fact, it was minimal. No misrepresentations were made by the Tolars to National General. The National General policy had not been cancelled. Witness B.L. Nolen, vice president and general manager of National General, testified that his company was requested to terminate the policy by Bankers Trust Savings & Loan Association on September 4. On cross-examination, this witness was asked:
Q. So you are telling me then that Bankers Trust had forwarded the escrow money for the policy premium to National General prior to the expiration of the policy to keep the policy in force?
A. That is correct.
Q. All right, so then when the letter of September 4 was written to you, the policy was still in force because you had the premium?
A. That is correct.
In addition to this witness, Cavin testified that after his conversation with Harrison he only "assumed" that the National General policy would be replaced. He further testified that after the conversation he did not even know how much insurance Harrison had written.
National General contends that its policy was cancelled "by operation of law" upon Harrison issuing State Farm's binder on March 14. To substantiate this contention, National General relies on the case of Woolverine Insurance Co. v. Taylor, 312 So.2d 699 (Miss. 1975). That case is not applicable to National General's contention. There, Taylor, the insured, purchased a house trailer and financed it with the local bank. A policy of insurance was secured by Taylor. After the loan was fully paid, Taylor voluntarily requested that the policy be cancelled and he actually mailed the policy to the company several weeks before the trailer was destroyed by a wind storm. The facts were entirely different from the present case. The Taylor policy was cancelled when it was surrendered by Taylor.
In the present case, the Tolars had no information whatsoever that National General's policy had been or was being cancelled. They had just had a conversation with the agent regarding the increase in coverage and the agent had agreed thereto. Admittedly, the policy was not cancelled until after the loss and then only by the mortgagee. There was no notice of cancellation after Cavin had agreed for the Tolars to secure other insurance, and he made no further contact with them after receiving notification from Harrison that this had been done.
We hold, therefore, that the National General Insurance Company policy was in full force and effect as to both the insureds and the mortgagee at the time of the fire loss. The question remains as to the respective liability of the two insurance companies. *738 At the outset we are faced with an error of the lower court in adding twenty percent to the amount owed the mortgagee as attorneys' fees. The only obligation for attorneys' fees is set out in the note signed by Mr. and Mrs. Tolar. There is no judgment being rendered against the Tolars by this Court under the terms of the note. The principal judgment is against the two insurance companies under the original complaint filed by Bankers Trust Savings & Loan Association.
We hold, therefore, that the principal amount of indebtedness owed Bankers Trust Savings & Loan Association should be established as of the date of the final judgment and mandate of this Court, exclusive of attorneys' fees. Judgment then will be rendered here against State Farm Fire & Casualty Company and National General Insurance Company, each in a pro-rata amount as the total insurance of each bears to the balance of the debt owed on said date. This decision is required by the statutory mortgage clause in each policy which provides that,
[I]n case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having insurable interest therein, whether as owner, mortgagee, or otherwise.
It is obvious that the full amount of National General's policy will not be exhausted after paying its pro-rata share of the mortgagee's debt. We hold that this policy is primary coverage as to the Tolars, and as the insureds were allowed to recover thereon, that any amount remaining shall be paid to the insureds, Harold G. Tolar and Nell F. Tolar, up to the limit of National General's policy.
We further hold that State Farm Fire & Casualty Company is entitled to subrogation of all amounts paid by it against any debt, claim or lien held by or owed Bankers Trust Savings & Loan Association pursuant to any security instruments including the original note and deed of trust executed by the Tolars.
We hold that the original complainant, Bankers Trust Savings & Loan Association, is not legally entitled to attorneys' fees for the reason that the only attorneys' fees contracted for existed in the original note from the Tolars to Bankers Trust. Judgment is not being given under that instrument but only against the insurance companies under the policies of insurance by Bankers Trust as mortgagee.
We find that under the original subordination agreement between Citizens Bank of Columbia and Bankers Trust, the latter owes the former $2,059.05, plus legal interest, as found by the lower court. Bankers Trust Savings & Loan Association shall be subrogated to the rights of Citizens Bank of Columbia under its note and deed of trust.
It is necessary for computations of the amounts of the judgments consistent with this opinion be computed and there is not sufficient evidence in the record for this Court to make those computations. The cause is reversed and remanded to the lower court for additional hearing if necessary and the entering of final decrees consistent with this opinion.
The lower court costs and the cost of this appeal are taxed in three equal parts against State Farm Fire & Casualty Company, National General Insurance Company, and Harold G. and Nell F. Tolar.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
PATTERSON, C.J., SMITH, P.J., ROBERTSON, P.J., and SUGG, WALKER, LEE and COFER, JJ., concur.
BROOM, J., took no part.