## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 99-60150
Summary Calendar

NATIONWIDE MUTUAL FIRE INSURANCE CO.,

Plaintiff-Counter Claimant-Appellee,

versus

PAUL D. MELTON,

Defendant-Counter Claimant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi
(2:98-CV-7)

December 14, 1999

Before POLITZ, WIENER, and STEWART, Circuit Judges.

POLITZ, Circuit Judge:[*]

Paul D. Melton appeals an adverse summary judgment in his insurance contract dispute with Nationwide Mutual Fire Insurance Company. Finding and concluding that the record discloses a genuine dispute of a material and relevant fact, thus making the entry of summary judgment inappropriate, the challenged summary judgment is vacated and the matter is remanded to the trial court for further proceedings.

## Background

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On October 4, 1995 Melton met with Roger Easley, Nationwide's agent in Greenwood, Mississippi. Melton was seeking insurance coverage of his residence in Webb, Mississippi. During the meeting Easley read to Melton the questions on Nationwide's standard homeowner's insurance application form and recorded his answers. The form is a one-page document containing questions about the premises to be insured and the party seeking insurance. The overwhelming majority of those questions pertain to the subject premises.[1] One of the questions on the application is simply, "PAST LOSSES:". Easley's summary judgment testimony informs that he did not recall the details of his session with Melton, but that his usual practice in asking this question is not to narrow the question to the subject property nor to elaborate so as to include other properties. He says that typically he asks whether the applicant has "had any past losses, prior losses". Melton responded to this question by describing a claim he submitted in 1993 to recover for damage to the Natchez Avenue residence sustained during an ice storm. Easley wrote in the area next to the question, "02-01-93 $600 ICE STORM, FOOD,

---

[1]The application seeks the following information with regard to the property: the type and extent of coverage sought for the property; the number of dwellings on the property (in this case one); the number of families and persons occupying the dwelling; whether the dwelling is owner-occupied, used seasonally, used as a secondary dwelling, occupied during the day, currently occupied, and has an approved roof; the year the dwelling was constructed; the construction type; when it was last remodeled; the date the property was purchased by the current owner; AMP Service for; the manner in which the dwelling is heated; the type of fuel used in the dwelling; the manner in which the chimney is constructed and lined; whether there are other structures on the property; whether dangerous animals are kept on the property; and the previous insurance provider for the property. The only information requested that was personal to Melton was his name, address, telephone numbers, birth date, and whether he or anyone in his family had been sued, filed bankruptcy, had a repossession or judgment against them in the last seven years.

BIRD BATHE, [sic] ETC."

On the basis of the information provided on the application and in response to the questions, Nationwide agreed to insure Melton's home.

In the early morning hours of October 21, 1997, the residence in Webb and its contents were substantially destroyed by fire. The cause of the fire remains undetermined. Melton submitted a claim for the loss under his homeowner's policy with Nationwide.

Upon notification of the fire, Nationwide began an investigation of the fire loss claim. During its investigation, Nationwide learned that Melton had incurred several fire losses prior to submitting the application for the policy at issue in this action.[2] None of these losses occurred at the Webb residence. Melton admitted in an examination under oath that he had incurred these losses and confirmed that he had not informed Easley, or any other Nationwide representative, about these past losses.

On January 5, 1998, Nationwide informed Melton that it considered the policy void at its inception because Melton had misrepresented facts in the application by not disclosing all of his previous fire losses in response to the "past losses" question. Nationwide filed the instant action, seeking a declaration that the

---

[2]Specifically, Nationwide learned that Melton had incurred a May 20, 1989 fire loss to a mobile home for which USF&G insurance had paid $9,500; a July 20, 1989 fire loss to a dwelling for which USF&G Insurance had paid $30,000; a February 21, 1993 fire loss to a barn for which USF&G Insurance had paid $10,000; and a February 23, 1993 fire loss to a John Deere tractor for which John Deere Insurance Company paid $67,400. In response to requests for admissions, Melton admitted to eight additional fire losses.

policy was void and provided no coverage for the fire loss.  Melton counter-claimed, seeking damages.  The parties agreed, under 28 U.S.C. § 363(c), to trial before a magistrate judge.

Nationwide moved for summary judgment on the basis that Melton made material misrepresentations of fact in conjunction with his application for insurance thus voiding the policy.  The magistrate judge agreed and rendered judgment accordingly.  This appeal followed.

Analysis

We review a grant of summary judgment *de novo*.  Summary judgment is to be granted if the record, as a whole, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[3]  Once a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[4]  The mere claim of an alleged factual dispute between the parties will not defeat a properly supported motion.

In this diversity case we apply the substanative law of Mississippi.  Under that law, if an insured makes a material misrepresentation on his application for insurance, and the insurance company provides a policy in reliance thereon, the

---

[3]F.R.C.P. 56; **Mulberry Square Productions, Inc. v. State Farm Fire and Cas. Co.**, 101 F.3d 414 (5th Cir. 1996).

[4]**Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242 (1986).

policy is void *ab initio*.[5] This result appertains whether the applicant intentionally or knowingly made the misrepresentation.[6] A policy may not be avoided, however, based on the applicant's failure to disclose facts about which the insurer did not inquire.[7] "[T]he company has no right to rescind the policy because there was information, not asked on the application and not volunteered by the applicant, the knowledge of which would have caused the company to refuse to insure."[8] Melton does not challenge the district court's conclusion that his responses were material or that Nationwide relied on the statements in his application in issuing the policy. His appeal focuses on whether there is a misrepresentation as a matter of law.

In interpreting the meaning and scope of a representation contained in an application for insurance, Mississippi law applies rules generally available for the interpretation of written instruments.[9] Melton's representation must be defined with reference to the question posed by Nationwide. Melton and Nationwide offer

---

[5]**Nationwide Mutual Fire Ins. Co. v. Dungan**, 634 F.Supp. 674 (S.D. Miss. 1986), aff'd 818 F.2d 1239 (5th Cir. 1987); **Dukes v. South Carolina Insurance Co.**, 590 F.Supp. 1166 (S.D. Miss. 1984) aff'd 770 F.2d 545 (5th Cir. 1985); **Tolar v. Bankers Trust Savings & Loan Ass'n**, 363 So.2d 732 (Miss. 1978).

[6]**Dungan,** 634 F.Supp. 674; **Dukes,** 590 F.Supp. 1166.

[7]**Mattox v. Western Fidelity Insurance Co.**, 694 F.Supp. 210 (N.D. Miss. 1988). See also **National Union Fire Ins. Co. v. Continental Illinois Corp.**, 643 F.Supp. 1434 (N.D. Ill. 1986).

[8]**Mattox**, 694 F.Supp. 210.

[9]**Home Ins. Co. of New York v. Cavin**, 137 So. 490 (Miss. 1931). See also **National Union Fire Ins. Co.**, 643 F.Supp. 1434 (applying the rule of construction for ambiguous insurance policies to an ambiguous representation drafted by the insurer under Illinois law).

two different interpretations of the "past losses" question. Melton claims to have understood the question to ask only about past losses on the premises sought to be insured. Nationwide urges us to conclude that the question solicited information about all prior losses. When, as is often the case, the questions on an insurance application reasonably are susceptible of only one interpretation, the legal effect of the applicant's responses presents a question of law.[10] Such was the case in **Dungan**, where the court found that the applicant's lack of candor in the face of unambiguous questions by the insurer amounted to a misrepresentation.[11]

We also find helpful the decision in **Mattox v. Western Fidelity Ins. Co.,**[12] a case decided in favor of the insured. In **Mattox** the health insurance application asked whether the applicant had diabetes. Agents for Western understood this to mean elevated sugar levels in the blood. This definition of diabetes was not communicated to Mattox who had never been diagnosed by her doctor as being diabetic. At most, she had demonstrated elevated blood sugar levels. Mattox responded in the negative to the application's diabetes inquiry. The court concluded that Mattox made no misrepresentation.

---

[10]**Cavin**, 137 So. 490; **Dungan**, 634 F.Supp. 674; **Mattox**, 694 F.Supp. 210.

[11]Nationwide makes much of the similarities between this case and **Dungan**, but in doing so overlooks the paramount distinction that in **Dungan** the application clearly and unambiguously requested information that the applicant withheld. Further, the "past losses" question in **Dungan** was significantly different from the analogous question in the present case. Dungan was asked to describe *each item* damaged or stolen when explaining his past losses; there was no mistaking that the question solicited information regarding property other than that to be insured. In any case, the district court did not fully consider whether the "past losses" question was ambiguous because it was able to rely on any of the several material omissions that unquestionably existed on Dungan's application.

[12]694 F.Supp. 210 (N.D. Miss. 1988).

6

The facts at bar fall somewhere between the relevant facts in **Dungan** and **Mattox**. The court found Dungan's omissions were misrepresentations because the information was "unequivocally solicited." The oral questioning of Melton by Easley did not define the scope of "past losses." The simple inquiry "past losses" was not such that it necessarily triggered a response beyond that keyed to the subject property which Melton gave.

On the summary judgment record before us we cannot say that Melton did or did not misrepresent his answer to the past losses inquiry. More is required before that factual call may be made. The record does not suffice for a summary judgment disposition of the issues presented in the claim and counterclaim. Accordingly, the summary judgment is VACATED, and the matter is REMANDED to the trial court for further proceedings consistent herewith.