## MARYLAND CASUALTY CO. *v.* GRACE.

### [70 South. 577.]

1. INSURANCE. *Accident insurance. Right of assignees. Contract. Execution. Evidence.*

   The assignee of a claim for damages under an accident insurance policy has no greater right and no superior claim than that possessed by the assignor.

2. INSURANCE. *Accident insurance. Contract. Execution. Evidence.*

   Where the local agent of an accident insurance company mailed a policy to the insured, who refused to accept it or pay the premium but failed to return the policy, and notified the agent to cancel it and supposed the agent had done so, and there was no evidence that the premium had ever been paid to the company, in such case the company was not liable for a claim for damages to assured which was assigned by him after the expiration of the policy and upon which suit was brought by the assignee.

APPEAL from the circuit court of Leflore county.

HON. MONROE MCCLURG, Judge.

Suit by M. B. Grace, an assignee of D. C. Jones, against the Maryland Casualty Company. From a judgment for plaintiff, defendant appeals, and plaintiff prosecutes a cross-appeal from an order vacating a prior default judgment in his favor.

The facts are fully stated in the opinion of the court.

*Gardner & Whittington,* for appellant.

*M. B. Grace,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant prosecutes an appeal from a judgment for three hundred and twenty-five dollars rendered against it by the circuit court of Leflore county in favor of appellee, and based on an alleged claim assigned to ap-

pellee by one D. C. Jones. Miss Pauline Melton, the local agent of appellant at Greenwood, Miss., forwarded by mail, January 16, 1912, to D. C. Jones, at Money, Leflore county, Miss., the accident policy sued on. Mr. Jones declined to pay the premium of twenty-five dollars on this policy; and in January, 1913, Miss Melton brought suit against Jones in the justice of the peace court for the alleged premium due on the policy. When her suit came on for trial at Money, Miss Melton was represented by M. B. Grace, an attorney at law, appellee herein, and the defendant was represented by counsel. Before the trial of the case in the magistrate's court, a written agreement in settlement and compromise of the suit was entered into as follows:

"For and in consideration of M. B. Grace paying Miss Melton the sum of twenty-five dollars ($25.), the sum she is suing me for, and all court costs, and dismissing the cause, I do hereby agree to fill out the notice of the accident to the Maryland Casualty Company and fill out and sign the several blanks; and I assign all my right, interest and title in and to the said claim, in consideration of the above, to M. B. Grace, and, if the said draft is issued in my name, I agree to indorse and assign same to M. B. Grace, and, if the claim is turned down by the company, I agree to bring suit in my name for the use of M. B. Grace, and prosecute the suit to judgment, M. B. Grace to represent me without cost to me, and, in case of judgment, to indorse the voucher or draft sent me in settlement of suit or judgment, if I get a judgment, and I agree to appear and testify in said cause where same may be filed and do all in my power to assist M. B. Grace to collect the claim.

"Signed this the January 29, 1913.

"[Signed] D. C. Jones.

"Witnessed:

"[Signed] J. G. Gillespie."

Mr. Jones thereupon filled out the regular blanks provided by Miss Melton, giving notice to the company of

an alleged accident and making proofs of certain alleged injuries claimed to have been sustained by him in October, 1912, and for which he demanded the sum of three hundred and twenty-five dollars. Appellant declined to pay the claim, or any part thereof, and this action was thereupon instituted by M. B. Grace, as assignee. Issue was joined and the plaintiff, in support of his claim, introduced Mr. Jones himself as his first witness. This witness was interrogated about the policy in question, and denied altogether accepting the policy of insurance, the basis of the claim here sued on. Extracts from his testimony are as follows:

"Q. At the time you were injured, tell the jury whether or not you had this policy of insurance I hand you. A. I did not know it was in force, I had canceled it. Q. The policy of insurance was in your possession at that time? A. Yes, sir; that policy was there, but in the meantime I had canceled it. Miss Melton never told me to return it when I told her to cancel it. . . . Q. You had a conversation with her about the matter? A. No, sir; she asked me about the policy and I told her I would let her know, and in about ten days I received it. Q. You accepted it? A. No, sir. . . . Q. Mr. Jones, Miss Melton brought suit for the premium on that policy, did she not? A. Yes, sir. . . . Q. Where at? A. Before the magistrate at Money. Q. Who was the attorney for Miss Melton? A. You were."

### CROSS-EXAMINATION.

"Q. Mr. Jones, I understand you to say Miss Melton sent this policy to you? A. Yes. Q. What date? A. I don't remember the date. She asked if I wanted the policy and I told her I would let her know when I had more time. Q. You got it through the mail? A. Yes. Q. Did you tell her to send it? A. No. Q. Did you know it was the policy? A. Yes. Q. What did you do? A. I told her I did not want it. Q. What else? A. I told her to cancel it. Q. How long after you received it?

A.  About a week.  .  .  .  Q.  What did you do after
you found she had issued it?  A.  I told her to cancel it,
I did not want it.  .  .  .  Q.  Is it not a fact that this
assignment was made at the suggestion of Mr. Grace as
the attorney for Miss Melton?  A. Yes.  Q.  Is it not a
further fact you did not make any claim on this policy
until Mr. Grace brought suit, and suggested that you
assign it to him?  A.  No, sir; not until after that.  Q.
Is it not a fact you did not make any claim of liability
on the company until Mr. Grace had you make this as-
signment?  A.  Yes.''

The witness in this and other portions of his testimony
tells the court frankly that he never had any contract
with appellant; that although Miss Melton forwarded
him the written policy, he notified her that he did not
want the policy and asked her to cancel it, and that he
considered the policy canceled.  He states further that
he never would have made any claim under the policy if
Mr. Grace had not requested him to do so, and that he
did it purely and simply to avoid the lawsuit in the
justice's court over the premium.  The testimony of
Mr. Jones was followed by that of Mr. Grace in his own
behalf and by the testimony of Dr. Sandifer with ref-
erence to an ulcer or sore on the ankle of Mr. Jones. The
declaration charged that Mr. Jones was thrown from his
horse and injured.  Mr. Jones in his testimony with
reference to the alleged injury stated that while riding
horseback a cane ''was thrown from the stalk in my
ankle'' and ''bruised my ankle and caused a sore on
it.'' . The alleged injury, according to the plaintiff's tes-
timony, occurred October 3, 1912, and no claim was pre-
sented to the company therefor until some time after the
written agreement was entered into between appellee and
Mr. Jones.

When plaintiff rested his case, appellant, as defend-
ant in the court below, moved to exclude the plaintiff's
evidence, and to grant it a peremptory instruction.  This
motion was by the court overruled, and the defendant

thereupon rested his case. A peremptory instruction was requested by both parties, and the court, on the question of liability, gave a peremptory instruction requested by appellant. While there are several assignments of error, and a cross-appeal prosecuted by appellee based upon the action of the court in setting aside a default judgment rendered on a previous day of the term and permitting appellant to defend the suit, it is only necessary to consider the assignment of error based upon the action of the court in overruling motion to exclude the plaintiff's evidence, and to grant a peremptory charge in favor of appellant.

Appellee unquestionably has no greater rights and no superior claim than that possessed by Mr. Jones, the alleged holder of the policy. The testimony of Mr. Jones is decisive against the assigned claim of appellee. While the record is silent as to whether the agent, Miss Melton, was charged by the company with the premium, and as to whether the company actually received the premium from its agent, the proof is uncontradicted that Jones declined to accept the policy, requested its cancellation long before the alleged injury, and treated the policy as never in existence. The policy, on its face, expired January 15, 1913, unless renewed. At no time during the one year from the date of its issuance did Mr. Jones by any word or act ratify the alleged contract or accept the policy. At the time he compromised the lawsuit brought by Miss Melton against him in the justice's court and entered into the written agreement with appellee, the policy, if ever in existence, had expired. It is manifest that had no suit been filed against Mr. Jones for the twenty-five dollar premium, no demand would have been made by him for any injury alleged to have been covered by the policy. According to the testimony of Mr. Jones, it was the unusual and questionable offer made by the private counsel of the company's agent that brought forth the present lawsuit; and it is upon the evidence in support of his own trade that appellee's claim must

stand or fall.  In our judgment, no liability whatever was shown, and the peremptory instruction should have been given appellant.

The views here expressed make it unnecessary for us to comment upon the assignment of errors presented by the cross-appeal.

Let the judgment of the lower court be set aside, and the suit dismissed.

*Dismissed.*