652 So.2d 732 (1995)
MISSISSIPPI INSURANCE GUARANTY ASSOCIATION
v.
HARKINS & COMPANY.
No. 92-CA-00350-SCT.
Supreme Court of Mississippi.
March 16, 1995.
Robert H. Pedersen, Watkins & Eager, Jackson, for appellant.
Mark C. Baker, Wilburn Hyche, Rainer & Hyche, Brandon, for appellee.
*733 Before HAWKINS, C.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
HAWKINS, Chief Justice, for the Court:
On July 11, 1991, appellee Harkins & Company (hereinafter "Harkins") filed a complaint against appellant Mississippi Insurance Guaranty Association (hereinafter "MIGA"). After 30 days passed without any action by MIGA, Harkins filed an Application for Entry of Default and Supporting Affidavit on August 22, 1991. That same day a Docket Entry of Default was entered against MIGA by the Rankin County clerk. On August 30, 1991, Harkins filed an Amended Complaint against MIGA. This time, MIGA responded with a filing styled Defenses and Answer of Mississippi Insurance Guaranty Association which was entered September 30, 1991. Harkins then entered a Motion for Summary Judgment on November 8, 1991, which was followed by MIGA's Motion to Strike and Set Aside Entry of Default on November 27, 1991. An Order setting aside Default was entered on December 12, 1991.
On November 27, 1991, MIGA filed a motion styled MIGA's Opposition to Plaintiff's Motion for Summary Judgment and MIGA's Cross-Motion for Summary Judgment, which was supplemented on January 8, 1992. MIGA's Rebuttal Brief in Support of Its Summary Judgment and in Opposition to Harkins' Motion for Summary Judgment was filed on January 2, 1992. Harkins filed a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and to Defendant's Cross-Motion for Summary Judgment on December 6, 1991, to which they added a Supplemental Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and to Defendant's Cross-Motion for Summary Judgment on January 7, 1992.
A Memorandum Opinion and Order granting Harkins' motion for summary judgment and denying MIGA's motion for summary judgment was entered on February 20, 1992. A final judgment, which differed from the Memorandum Opinion and Order only as to the amount awarded, was filed on March 4, 1992. On March 4, 1992, MIGA filed an appeal to this Court.

FACTS
The facts in this case are essentially undisputed. Harkins & Company is a Texas corporation which was authorized to do business in Mississippi from March 13, 1970, to February 16, 1990. The Mississippi Insurance Guaranty Association is a nonprofit unincorporated legal entity created by statute under § 83-23-111. In 1985 Harkins owned a 25% share and operated the Fortenberry Unit 10-11 No. 1 Well located in Jefferson Davis County, Mississippi. In the summer of that year, the company rented 432 joints of tubing from the Louisiana-based LTM Rental Tools, which were run into the well on June 12, 1985. It was soon discovered that in the course of operation the tubing had accidentally been cemented in the hole. After the tubing was removed, tests of the tubing conducted by Free State Tool Company revealed that three joints of tubing leaked and that these leaks had caused the tubing to be improperly cemented.
Harkins sued LTM Rental Tools and four other defendants in the United States District Court for the Southern District of Mississippi, Hattiesburg Division, on March 28, 1989. A Motion for Judgment by Default entered on April 24, 1990, by Harkins against LTM Rental Tools claimed that the tubing caused $219,274.09 in damages. MIGA's Rebuttal Brief in Support of Its Summary Judgment and in Opposition to Harkins' Motion for Summary Judgment gives a useful point-by-point summary of these damages as described in an affidavit and exhibits entered by Harkins in conjunction with their motion for default against LTM. According to MIGA's brief the damages consisted of:
1. $71,657.90 for rig charges paid to Triple S Oil Service for pulling the defective tubing from the gas well.
2. $22,620.00 for renting the tubing from LTM at the rate of $780.00 per day for 29 days.
3. $8,063.74 for renting other tubing.
4. $5,913.72 to McMullough Tool Company for running a piece of equipment called a "jet cutter."
5. $1,709.74 to Free State Tool Company for testing the tubing.

*734 6. $950.82 to Free State Tool Company for running the bailer during the removal of the tubing from the well.
7. $2,523.00 to Halliburton for pumping services provided while the tubing was being removed from the well.
8. $4,326.29 to Dresser Atlas to re-perforate a formation during the removal of the tubing.
9. $97,566.60 to Rainbow Rental & Fishing Tools for equipment used during the removal of the tubing.
10. $3,942.28 to Halliburton for damage that occurred to a setting tool during the removal of the tubing.
LTM did not answer Harkins' complaint or oppose Harkins' motion for default. A judgment dated May 4, 1990, found for Harkins against LTM in the amount of $219,274.09 plus prejudgment interest and costs.
At the time of the well tubing incident, LTM was insured by Westmoreland Casualty Company under a comprehensive general liability insurance contract. According to the Mississippi Department of Insurance, Westmoreland Casualty Company was licensed in Mississippi from May 1, 1983, to November 23, 1987. Westmoreland Casualty was later declared insolvent by the Commonwealth Court of Pennsylvania on September 27, 1988.
The present lawsuit began with Harkins' July 11, 1991, filing of a Complaint against MIGA in the circuit court of Rankin County. On August 22, 1991, Harkins applied for an entry of default against MIGA which was entered by the Circuit Clerk that same day. Harkins then filed an Amended Complaint on August 30, 1991, to which MIGA filed defenses and an answer on September 30, 1991. About a month later, on November 27, 1991, MIGA filed a motion to Strike and Set Aside Entry of Default, which was granted on December 12, 1991.
On November 8, 1991, Harkins filed a Motion for Summary Judgment against MIGA. MIGA responded on November 27, 1991, with a motion styled MIGA's Opposition to Plaintiff's Motion for Summary Judgment and MIGA's Cross-Motion for Summary Judgment which they supplemented on January 8, 1992. Harkins then filed a Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and to Defendant's Cross-Motion for Summary Judgment on December 6, 1991, which was followed on January 7, 1992, by their Supplemental Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and to Defendant's Cross-Motion for Summary Judgment.
On February 20, 1992, a Memorandum Opinion and Order was handed down by Circuit Court Judge John Toney which denied MIGA's motion for summary judgment, granted Harkins' motion for summary judgment, and awarded Harkins $219,274.09 plus court costs and eight percent interest from September 1, 1985, until the date of payment of the judgment. MIGA then entered a motion to amend the Memorandum Opinion and Order on February 28, 1992. According to this motion, the total amount of the judgment as outlined by the Memorandum Opinion and Order would be $332,791.81 and that under Miss. Code Ann. § 83-23-101 et seq. (1972), MIGA's maximum obligation was only $300,000.00. Therefore, claimed MIGA, the court should amend its opinion and hold that they be required to pay Harkins only $300,000. This motion was granted by Judge Toney on March 4, 1992. That same day, Judge Toney also granted Harkins' motion for summary judgment and awarded them $300,000.00. MIGA appealed to this Court on March 31, 1992.

LAW
The standard of review in summary judgment cases is well established. According to Townsend v. Estate of Gilbert, 616 So.2d 333 (Miss. 1993):
This Court employs a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. This entails reviewing all the evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to ... the non-moving parties, and they are to be given the benefit of every reasonable doubt. A motion for summary judgment lies only when there is *735 no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c) This Court does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried.
Id. at 335 (citations omitted).
In the case at bar, the parties have agreed that there are no genuine issues as to material fact. All that remains is to determine if one of the parties is entitled to a judgment as a matter of law.
Before dealing with the specific claims of the appellant, Mississippi Insurance Guaranty Association, it is useful to take a close look at the Association itself and the laws which govern it.[1] The Mississippi Insurance Guaranty Association was created by Miss. Code Ann. § 83-23-111 (1972):
There is created a nonprofit unincorporated legal entity to be known as the Mississippi Insurance Guaranty Association. All insurers defined as member insurers in section 83-23-109 shall be and remain members of the association as a condition of their authority to transact insurance in this state... .
"Member insurer" is defined in Miss. Code Ann. § 83-23-109(e) as "any person who (1) writes any kind of insurance to which this article applies under section 83-23-105, including the exchange of reciprocal or interinsurance contracts, and (2) is licensed to transact business in this state." According to Miss. Code Ann. § 83-23-105, "This article shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance."
Furthermore, under Miss. Code Ann. § 83-23-103 (1972):
The purpose of this article is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policy-holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.
Finally, guidelines for the proper construction of this law can be found in Miss. Code Ann. § 83-23-107 (1972). "This article shall be liberally construed to effect the purpose under section 83-23-103, which shall constitute an aid and guide to interpretation."
With the proper standard of review and a more thorough understanding of the Mississippi Insurance Guaranty Association in mind, we can now more effectively examine the individual issues of the case.
The term "covered claim" is defined in Miss. Code Ann. § 83-23-109(c) (1972) as:
[A]n unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.
The Texas-based Harkins & Company admits that their claim is not covered under subpart (1) of § 83-23-109(c). They state that their claim instead falls under the "property permanently located in this state" clause of § 83-23-109(c)(2).
If the claim arises out of the well, Harkins' claim under this point is valid. Few things are more permanently located than a three-mile-deep hole in the ground. According to MIGA, however, the claim in question flows from the easily transported tubing instead. Nevertheless, despite MIGA's numerous protestations, the facts clearly favor Harkins. Indeed, according to the summary of damages found in MIGA's Rebuttal Brief in Support of Its Summary Judgment and in Opposition *736 to Harkins' Motion for Summary Judgment, the damages claimed by Harkins clearly were to the well and not to the tubing:
1. $71,657.90 for rig charges paid to Triple S Oil Service for pulling the defective tubing from the gas well.
2. $22,620.00 for renting the tubing from LTM at the rate of $780.00 per day for 29 days.
3. $8,063.74 for renting other tubing.
4. $5,913.72 to McMullough Tool Company for running a piece of equipment called a "jet cutter".
5. $1,709.74 to Free State Tool Company for testing the tubing.
6. $950.82 to Free State Tool Company for running the bailer during the removal of the tubing from the well.
7. $2,523.00 to Halliburton for pumping services provided while the tubing was being removed from the well.
8. $4,326.29 to Dresser Atlas to re-perforate a formation during the removal of the tubing.
9. $97,566.60 to Rainbow Rental & Fishing Tools for equipment used during the removal of the tubing.
10. $3,942.28 to Halliburton for damage that occurred to a setting tool during the removal of the tubing.
All of the above damages are in some way concerned either with the well itself or to steps taken to return the well to useful service. Although some of these necessarily involve the tubing indirectly, the primary object of these claims is obviously the well. The ruling of the lower court holding that this claim falls under § 83-23-109(c)(2) was therefore proper. As stated above, § 83-23-109(e) defines a member insurer as "any person who (1) writes any kind of insurance to which this article applies under section 83-23-105, including the exchange of reciprocal or interinsurance contracts, and (2) is licensed to transact business in this state." Under § 83-23-105, "This article shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, and ocean marine insurance." Miss. Code Ann. § 83-23-105 (1972). Additionally, "`Insolvent insurer' means (1) an insurer authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred and (2) determined to be insolvent by a court of competent jurisdiction."
The insured event in this case, namely the incident at the Fortenberry Unit 10-11 No. 1 Well, took place on June 12, 1985. According to a letter from the Mississippi Department of Insurance dated August 17, 1990, Westmoreland Casualty Company was licensed in Mississippi from May 1, 1983, to November 23, 1987. LTM Rental Tools was insured by Westmoreland at that time under a comprehensive general liability insurance contract. Furthermore, Westmoreland Casualty was declared insolvent by the Commonwealth Court of Pennsylvania on September 27, 1988. Finally, MIGA does not claim on appeal that Westmoreland paid the policy, that the event was not within the policy's coverage, or that the claim was in excess of the applicable limits.
When one applies the law to the facts of the case at bar, one must conclude first, that as of the time of the June 12, 1985, insured incident, Westmoreland Casualty was a member insurer for the purposes of § 83-23-109(e); and second, that as of the September 27, 1988, declaration by the Pennsylvania court, Westmoreland was an insolvent insurer for the purposes of § 83-23-109(d). Therefore, as the present claim is an unpaid claim which arises out of and is within the coverage and which is not in excess of the applicable limits of an insurance policy to which the article applies issued by an insurer which has become insolvent and which concerns property permanently located in the state, the claim qualifies as a "covered claim" under § 83-23-109(c).
MIGA attempts to avoid the plain language of the statute stating that as this policy was bought as a surplus lines policy in Louisiana, it does not fall under the coverage provided by the Mississippi statutes. To support this proposition MIGA points to Railroad Roofing and Building Supply Co. v. Financial Fire and Casualty Co., 85 N.J. 384, 427 A.2d 66 (1981); Adams v. Illinois Insurance Guaranty Fund, 85 Ill. App.3d 867, 41 Ill.Dec. 140, 407 N.E.2d 638 (1980); *737 and Osborne v. Edison, 211 N.W.2d 696 (Iowa 1973), as saying that surplus lines policies are not covered under state insurance guaranty associations. The facts in those cases, however, are quite different from the facts in the case at bar. In each one, the insurance company was not in any way licensed in the state in which the claim against the insurance guaranty association was raised. In the case at bar, the insurance company was, at the applicable time, so licensed in Mississippi.
When one considers further that "the guaranty law statutes are to be liberally construed in order to achieve the purpose of protecting the public or claimants against financial loss because of the insolvency of insurers," Mississippi Insurance Guaranty Association v. Byars, 614 So.2d 959, 963 (Miss. 1993), MIGA's attempts to narrowly characterize the statute become even more strained. Harkins' claim falls within the plain language of the statute and as such constitutes a covered claim under § 83-23-109(c).
According to Miss. Code Ann. § 79-4-15.01 (1972):
(a) A foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State.
(b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a):
(1) Maintaining, defending or settling any proceeding;
....
(c) The list of activities in subsection (b) is not exhaustive.
The consequences of transacting business without authority are detailed in § 79-4-15.02:
(a) A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.
.....
(c) A court may stay a proceeding commenced by a foreign corporation, its successor or assignee until it determines whether the foreign corporation or its successor requires certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.
It also bears noting that the word "maintain" as used in this context can be read to mean either the continuation of an action or the commencement of an action. Parker v. Lin-Co Producing Company, 197 So.2d 228 (Miss. 1967).
In the case at bar, Harkins & Company president, Burt Harkins, attested in an uncontroverted affidavit dated January 8, 1992, that his company had no operations of any type on-going in Mississippi as of February 16, 1990, the date that their certificate of authority was suspended. He further stated that, "Harkins & Company is not now engaged in any substantive business in Mississippi, does not maintain an office or telephone in Mississippi, and does not own any interest in gas/oil wells in Mississippi."
Under § 79-4-15.02(a), a foreign corporation without a certificate of authority can not maintain an action in Mississippi if they are also transacting business in Mississippi. If they are not so transacting business, a certificate of authority is not required in order to maintain an action. This is demonstrated by § 79-4-15.02(c) which states that a court may stay a proceeding commenced by a foreign corporation until it determines whether the corporation requires a certificate of authority. As the court is granted some amount of discretion, clearly not all foreign corporations require a certificate to maintain an action. The record shows that the only business contact Harkins had with Mississippi in July 1991 when this suit was commenced was the actual commencement of the suit. Section 79-4-15.01(b)(1) states that simply maintaining, defending, or settling and proceeding does not constitute transacting business. Therefore, as Harkins was not transacting business when it started this suit, it did not need a certificate of authority.
An examination of the facts of this case shows that the insurance claim arose from the well, and not the tubing. As the well is *738 permanently located in Mississippi, the claim meets the covered claim requirement under § 83-23-109(c)(2).
Furthermore, as the present claim is an unpaid claim which arises out of and is within the coverage and which is not in excess of the applicable limits of an insurance policy to which the article applies issued by an insurer which has become insolvent and which concerns property permanently located in the state, the claim meets all the covered claim requirements of § 83-23-109(c). The fact that this policy was sold as a surplus lines policy in Louisiana has no bearing on the disposition of this matter in Mississippi.
Finally, as Harkins was not transacting business in Mississippi for purposes of § 79-4-15.02, it did not need a certificate of authority to commence this lawsuit.
As there were no genuine issues as to any material fact, and as Harkins was entitled to a judgment as a matter of law, the ruling of the lower court granting summary judgment is hereby affirmed.
AFFIRMED.
PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] It bears noting that the legislature amended many of these laws, effective from and after July 1, 1992. However, as the events of this case all took place before the new statutes became effective, the old statutes still apply.