761 So.2d 913 (2000)
Gerald WILSON and William L. Fennell, Appellants,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Appellee.
No. 1999-CA-00552-COA.
Court of Appeals of Mississippi.
May 30, 2000.
*914 Glenn F. Rishel Jr., Jackson, Attorney for Appellants.
Harry R. Allen, Colette Towles, Gulfport, Attorneys for Appellee.
BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.
LEE, J., for the Court:
¶ 1. The appellants, Gerald Wilson and William L. Fennell, instituted this civil action in the Circuit Court of Harrison County, Mississippi after the denial of Wilson's claim for fire damage to his home against his homeowner's insurance policy with State Farm Fire and Casualty Company. After the fire Wilson sold the property to Fennell and assigned all of his rights and claims to him. The circuit court granted State Farm's motion for summary judgment, *915 finding that there was no genuine issue of material fact that Wilson made misrepresentations on his application for the insurance policy, rendering the policy void, and dismissed the claims against State Farm. Finding no error in the lower court's judgment, we affirm.

SUMMARY OF THE FACTS
¶ 2. Gerald and Carol Wilson were the joint owners and named insureds of a house in Long Beach, Mississippi where a fire loss occurred on November 17, 1996. The house had been vacated as the result of their separation and pending divorce which was granted one month later. Pursuant to the property settlement agreement, Carol Wilson quitclaimed her interest in the house to Gerald Wilson and assigned any insurance proceeds to be paid in connection with the fire loss to him. In February 1997, Gerald Wilson assigned all his rights under the policy to Fennell upon payment of $8,000 for the house and the assumption of the outstanding mortgage of $47,500.
¶ 3. The investigation of the fire showed that it was incendiary and that it began in the hallway of the house with a combustible accelerant. The investigation was turned over to the Long Beach Police Department when it failed to disclose an accidental ignition source. State Farm, concluding that the fire was the result of arson, then procured a statement under oath from Gerald Wilson as part of its investigation. Wilson indicated that the house was insured with Allstate when it was purchased in August 1986 and that he changed over to State Farm in August 1990 because the rates were cheaper. He later changed this answer in his statement under oath using an errata sheet which was forwarded with the transcribed testimony of the statement. On the errata sheet he stated that he changed to State Farm because he was "declined because of 2 claims in specified time." After the suit was instituted against State Farm, Gerald Wilson conceded in his deposition that Allstate had sent him a letter "stating that they were not going to cancel me, but they were going to decline to renew the policy when it came up."
¶ 4. In his application to State Farm for insurance coverage dated August 21, 1990, Gerald Wilson, in response to whether he had incurred any losses in the past three years, insured or not, answered that he had. The application required that the applicant complete a section on the back of the form if there were such losses. Gerald Wilson submitted in this section that he had incurred one loss in 1988 for $2,800. In explaining the details of this loss, he stated that an explosion occurred in his garage while he was mixing a dry chemical with water to add to his swimming pool causing damage to the kitchen because the door leading to the kitchen from the garage was left open. In addition, another question on the application asked whether any insurer or agency had canceled or refused to issue or renew similar insurance to the applicant within the last three years. The response on the application was in the negative.
¶ 5. Following Gerald Wilson's statement under oath, State Farm investigated Wilson's reported loss and established that Gerald Wilson had three additional claims filed during 1989 with Allstate Insurance Company which were not reported in his application with State Farm for insurance coverage. This included two claims in excess of $9,660 for jewelry and Christmas presents that were reported stolen from Gerald Wilson's motor home on December 10, 1989, just eight months prior to submitting his application with State Farm. Gerald Wilson also reported a loss to Allstate on December 24, 1989 for a frozen swimming pool pump. Furthermore, Allstate's underwriting representative testified that the amount of the claim paid in connection with the swimming pool chemical explosion was $6,034, as opposed to the $2,800 Gerald Wilson represented in his application for insurance coverage with State Farm. Allstate's representative testified *916 that Allstate notified Gerald Wilson by letter that his homeowner's policy was not being renewed because of excessive claim activity effective August 31, 1990. In addition, Allstate declined to renew an automobile policy for Gerald Wilson on April 29, 1990 because of excessive claim activity.
¶ 6. State Farm advised Gerald Wilson by letter dated June 6, 1997 that his claim for benefits for the fire damage to his house under the policy were denied. The letter stated that the denial was based on State Farm's opinion that "the fire was intentionally set and there exists evidence of opportunity and motive regarding the fire." The letter also stated that the claim was being denied because of certain misrepresentation of material facts made to State Farm. The relevant portions of the State Farm policy cited as applicable to this fire loss were: (1) the declarations section which stated that the insureds' loss and insurance history during the three years preceding the time of the application for insurance must be indicated in the application, (2) the conditions section under coverages which stated that intentional acts by the insured causing a loss covered by the policy for the purpose of obtaining insurance benefits would render the policy void and payment would not be made for the loss, and (3) the concealment and fraud section under the conditions which stated that the policy was void if the insured had intentionally concealed or misrepresented any material fact or circumstance relating to the insurance, whether before or after a loss.
¶ 7. The agent who took the application and the underwriting operations supervisor who reviewed the application stated that based on State Farm's underwriting guidelines, the homeowner's policy would not have been issued to Gerald Wilson had he truthfully and accurately revealed his loss and claims history and the fact of non-renewal because of excessive claims with Allstate.
¶ 8. State Farm renewed the policy every year through 1996 and was without knowledge of the misrepresentations made by Wilson in his application until its investigation following the subject fire loss. In 1995 State Farm paid Wilson for a loss for lightening damage.

STANDARD OF REVIEW
¶ 9. When we are asked to review a lower court's grant of summary judgment, we employ a de novo standard of review. Seymour v. Brunswick Corp., 655 So.2d 892, 894 (Miss.1995) (citing Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss.1988)). Therefore, the Court considers facts without any deference to the trial court and applies its own interpretation of the law. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993). In applying a standard, we review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. Seymour v. Brunswick, 655 So.2d at 894. The evidence is viewed in the light most favorable to the non-moving parties, and they are given the benefit of every reasonable doubt. Mississippi Ins. Guar. Ass'n v. Harkins & Co., 652 So.2d 732, 735 (Miss.1995). Summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Id. To determine which factual issues are material, we must examine the substantive law that governs the case, and to determine if an issue of material fact is genuine, we must decide whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Page v. Wiggins, 595 So.2d 1291, 1295 (Miss.1992). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. Travis v. Stewart, 680 So.2d 214, 216 (Miss.1996). The comment to M.R.C.P. 56 on summary judgment states that summary judgment is not a substitute for the trial of disputed fact issues, rather, the motion may only determine whether there are issues of fact to be tried. Because summary judgment is a *917 powerful instrument that affects the substantive rights of a party, the party against whom summary judgment is sought should be given the benefit of every reasonable doubt. Daniels v. GNB Inc., 629 So.2d 595, 599 (Miss.1993).

ISSUES AND DISCUSSION
¶ 10. We recognize that Gerald Wilson entered into an agreement with William L. Fennell and assigned all his rights under the policy to him upon payment of $8,000 for the house which was yet to be repaired and the assumption of the outstanding mortgage of $47,500 in February, 1997. As a result of this assignment, Wilson is no longer a proper party plaintiff to this action. However, Fennell, as his assignee, stands in Wilson's shoes taking the assignment subject to any and all of the defenses State Farm could have asserted against Wilson. Maryland Cas. Co. v. Grace, 70 So. 577, 110 Miss. 488 (1916).

I. SUMMARY JUDGMENT WAS PROPER SINCE THERE IS NO ISSUE OF MATERIAL FACT THAT GERALD WILSON MADE MISREPRESENTATIONS REGARDING THE NON-RENEWAL OF HIS PREVIOUS INSURANCE COVERAGE AND HIS LOSS HISTORY ON HIS APPLICATION FOR COVERAGE WITH STATE FARM FIRE AND CASUALTY COMPANY, THEREBY RENDERING THE POLICY VOID.
¶ 11. Our cases in this state are numerous holding that an insurer of right may avoid coverage upon proof that the insured in the policy application made a substantial misrepresentation of a material fact. Sanford v. Federated Guar. Ins. Co., 522 So.2d 214, 217 (Miss.1988); Tolar v. Bankers Trust Sav. & Loan Assn., 363 So.2d 732, 735 (Miss.1978); Casualty Reciprocal Exchange v. Wooley, 217 So.2d 632, 635-36 (Miss.1969); Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117, 1121 (Miss.1989). There can be no question but if Gerald Wilson induced State Farm to accept the application and issue the policy binder by such fraudulent representations, State Farm may declare the policy void. Coffey v. Standard Life Ins. Co., 238 Miss. 695, 120 So.2d 143 (1960); 43 Am.Jur.2d, Insurance § 734 (1969).
¶ 12. In a case such as this, the judicial venture begins with an inquiry for the terms of the insurance contract. The relevant portions of the State Farm policy cited as applicable to this fire loss include the declarations section, which states:
Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:
1. Loss History: you and the members of your household have not had any insured losses, whether paid or not, that would have been covered under the terms of this or a similar policy; and
2. Insurance History: no insurance company has canceled or refused to renew your homeowners or fire insurance.
In Gerald Wilson's application for coverage, dated August 21, 1990, he submitted the following responses to questions, as follows:
Question: Has the applicant had any losses, insured or not, in the past three years (fire, crime, wind, etc.)?
Response: Yes.
Question: If yes, complete Loss Section on the back.
On the back of the application, Gerald Wilson submitted information regarding one previous loss in 1988 for $2,800. Under "Details of Loss", an explosion is listed as having occurred in Wilson's garage while Wilson was mixing a dry chemical with water to add to his swimming pool, causing damage to the kitchen because the door leading to the kitchen from the garage was left open. We note that in his deposition, Gerald Wilson corrected the description of this loss and stated that he *918 was actually mixing the chemicals in his kitchen at the kitchen sink when the explosion occurred. The application also showed that Wilson responded regarding cancellation and renewal as follows:
Question: Prior insurance carrier:
Response: Allstate (handwritten)
Question: Has any insurer or agency canceled or refused to issue or renew similar insurance to the named applicant or any household member within the past three years?
Response: No.
In addition, the State Farm Policy included in a section under Conditions, the following statement regarding concealment or fraud:
Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.
¶ 13. During his statement under oath, Gerald Wilson identified his signature on the application for insurance. Jackie Klusendorf, a licensed State Farm agent, was the office manager of the State Farm agency taking Wilson's application. She worked at this particular office from 1982 until 1995 and had worked in the insurance industry since 1955, except for a period when she did not work in order to raise her family. Klusendorf took Wilson's application and said that she was acquainted with Wilson and knew who he was when he came into the State Farm office to apply for insurance. She said that her children and his children knew each other, and she knew he had a hamburger restaurant. Klusendorf marked on the application in the appropriate space that she had known Wilson, the applicant, for three years. Klusendorf said that she followed the same procedure with Wilson as she did with other applicants for coverage in determining whether to issue coverage.
¶ 14. Klusendorf stated in her deposition that Wilson told her when he applied for the policy that he was currently insured with Allstate Insurance Company, and that he was going to be renewed on August 31, 1990. Allstate's representative testified that Wilson was notified that his policy would not be renewed as of August 31, 1990. Klusendorf also testified that Wilson responded "no" when asked if any insurer or agency had canceled or refused to renew similar insurance to him or a member of his household within the past three years. Klusendorf further testified that when asked how many prior losses Gerald Wilson had in the past three years, he described one loss in 1988, regarding the explosion of swimming pool chemicals for $2,800. Thus, Klusendorf's testimony in her deposition is consistent with the responses as marked on Wilson's application for insurance coverage with State Farm. Klusendorf testified that had she known that Allstate had canceled or was failing to renew Gerald Wilson's policy because of excessive claims, that she could not have bound coverage because State Farm's guidelines would not have allowed coverage under the circumstances, and that this was the procedure in determining whether to issue coverage. In addition, the underwriting operations supervisor who reviewed the application stated that based on State Farm's underwriting guidelines, the homeowner's policy would not have been issued to Gerald Wilson had he truthfully and accurately revealed his loss and claims history and the fact of non-renewal because of excessive claims with Allstate.
¶ 15. Contrary to his representations as testified by Klusendorf and reported in his application, Gerald Wilson had filed three additional claims with Allstate in December 1989, none of which were reported in the application. Klusendorf stated in her deposition that these claims were not reported to her and that she could not have bound coverage had they been reported to her. She was certain that she would have written them in the application had they *919 been reported because this was her procedure. Furthermore, Allstate's underwriting representative testified that the amount Allstate paid in connection with the claim for the swimming pool chemical explosion, which he did report, was $6,034 as opposed to the $2,800 Gerald Wilson represented in his application. An Allstate representative testified that Allstate terminated the policy because of excessive claim activity and notified Gerald Wilson by letter that his homeowner's policy was not being renewed effective August 31, 1990. Wilson argues in his brief that there is a genuine issue of material fact regarding whether he misrepresented to Klusendorf the fact of his non-renewal with Allstate on his application with State Farm and that summary judgment should have been denied accordingly. The basis of his argument lies in the testimony Wilson gave in his deposition where Wilson is queried regarding his non-renewal. The following colloquy ensues:
Question: But you didn't give this information to Mr. Walker, did you?
Answer: To the best of my knowledge, I think that I told him that they were considering not to renew me.
Question: But that's not what this question says, is it?
Answer: No, it's not.
Question: Okay. That's not what the answer says to the question; is that correct?
Answer: That's correct.
Question: That's the best of your knowledge. But you may not have, you're not sure? You just don't know one way or the other?
Answer: I'm not sure.
First of all, we must explain why Wilson is being asked if he gave this information to a Mr. Walker when Klusendorf clearly testified in her deposition that she took the application. Looking at Wilson's testimony in his deposition, it is evident that at this point in time, there is some confusion regarding which agent at State Farm actually filled out Wilson's application for insurance. The relevant portion of the deposition reads:
Question: You didn't tell the agent who was that, Mr. Walker?
Answer: Yes.
Question: And he filled it out personally, or did he have somebody in his office fill it out
Answer: I think
Question:they talked to you about this?
Answer: Yes. I don't know who filled it out.
Question: At any rate, after they filled it out, you read it and signed it; is that correct?
Answer: Yes.
Though Wilson states in his deposition that he does not know who filled out his application, looking at Klusendorf's deposition, it appears that this Mr. Walker is Mr. Fred Walker, Klusendorf's employer at State Farm from 1982 until 1995. Klusendorf was not certain whether Mr. Walker was in the office when she took Wilson's application; nevertheless, there was no question in her testimony that it was she who filled out Gerald Wilson's application.
¶ 16. The question of material fact that must be answered in order to determine if summary judgment was proper is whether Gerald Wilson told the agent taking his application for insurance that he was not being renewed. Klusendorf answers unequivocally that Wilson did not, the application shows that he did not, and Wilson says that he is not sure. In order to determine if an issue of material fact is genuine, we must decide whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Page, 595 So.2d at 1295. We believe that the answer to this question lies in Gerald Wilson's statement under oath which was taken fifteen months before the deposition was taken. In that statement, he states that his house was insured with Allstate when it was purchased in August 1986, and *920 that he changed over to State Farm in August 1990 because the rates were cheaper. Though he later changed his answer using an errata sheet to indicate that he changed carriers because he was "declined because of 2 claims in specified time," we believe that a reasonable jury would find from the original response in the statement under oath that Wilson intentionally misrepresented his claims and renewal history and that this would be consistent with Klusendorf's testimony that he did not tell her of the non-renewal when he applied for coverage. Our standard of review binds us to review the evidence in the light most favorable to the non-moving party, that is Wilson, giving him the benefit of every reasonable doubt. Mississippi Ins. Guar. Ass'n, 652 So.2d at 735. We find, in light of the above discussion, that there is no reasonable doubt from which to infer a benefit to Wilson. It is undisputed that the answers to questions on the application regarding claims and renewal were false, and it is also undisputed that State Farm would not have provided insurance coverage had the answers on the application been truthful. We thus find that summary judgment was proper, there being no issue of material fact that Wilson made material misrepresentations regarding the non-renewal of his previous insurance coverage and loss history on his application for coverage with State Farm, thereby rendering the policy void.

II. ESTOPPEL DOES NOT PREVENT STATE FARM FROM ASSERTING MATERIAL MISREPRESENTATION AND CONCEALMENT AS DEFENSES TO VOID THE POLICY.
¶ 17. The appellants argue that "Mississippi law unquestionably recognizes that an insurer may lose its right to claim a forfeiture of a policy or assert a defense to coverage under its policy, by the operation of the doctrine of waiver and estoppel." Appellants further argue that in order for a waiver to arise, the insurer must have an existing right to rescind and it must know of this right, and that estoppel arises when one party has reasonably relied on the conduct or statements of another to his detriment. Appellants cite State Farm's subsequent renewal of the policy to Gerald Wilson and State Farm's acceptance of the premiums during the period between the date of the application and the date of the loss in support of their argument.
¶ 18. The appellant's argument ignores that State Farm seeks to void the policy under the "Concealment and Fraud" provision of the policy and does not seek rescission or forfeiture. Nevertheless, estoppel arises when the person claiming the benefit of estoppel has been misled to his detriment. Casualty Reciprocal Exch. v. Wooley, 217 So.2d 632, 636 (Miss.1969). We cannot find that there are facts upon which an estoppel could arise in this case. The retention of a premium after knowledge of a breach of condition will not estop the insurer from denying liability, where such knowledge is not acquired until after a loss has occurred. 16A Appleman Insurance Law & Practice, §§ 9253 and 9303 (1968). An insurer may waive the right to forfeit or rescind a policy of insurance when the elements of estoppel are not present by recognizing the validity of the policy and continuing it in force after knowledge of circumstances entitling it to avoid the policy. Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932). The court held in Casualty Reciprocal Exchange, 217 So.2d at 636, that retention of the premium by the insurance company did not constitute a waiver since the company was not at the time aware of the fact that several questions on the insurance application had been falsely answered. Since the facts are undisputed that State Farm was not aware of the misrepresentations in the application until after the fire loss, its retention of the premiums and renewal of the policy each year until 1996 does not constitute a waiver. In addition, for the same reason, the payment of Wilson's claim in 1995 for lightening damage *921 does not estop State Farm from denying the validity of the policy.
¶ 19. Wilson argues vehemently, citing no authority, that because State Farm renewed Wilson's policy for six years, that "the issue of whether Wilson told State Farm about the refusal of Allstate to renew his policy and the issue of the claims made against Allstate became moot, since Wilson, in the preceding three years, had not been canceled or refused renewal or had excessive claims." We find no authority that renders such a perspective. State Farm asked on its application whether Wilson had been refused renewal for the past three years, specifically referencing the period of time from August 1987 through August 1990, since the application was being made in August 1990. Whatever happened regarding Wilson's insurance coverage thereafter is irrelevant to the answer to this question.
¶ 20. Finding that waiver and estoppel are not applicable, the facts indicate that State Farm is entitled to have the policy considered void ab initio. Id. at 635.

III. STATE FARM'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES WAS PROPERLY GRANTED.
¶ 21. In Mississippi, the law considers punitive damages an extraordinary remedy which are allowed with great caution and within narrow limits. Standard Life Ins. Co. v. Veal, 354 So.2d 239, 247 (Miss.1977). In order for the issue of punitive damages to be submitted to the jury the trial court must determine that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. Life & Casualty Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 622 (Miss.1988); Standard Life Ins. Co. v. Veal, 354 So.2d 239, 247-48 (Miss.1977).
¶ 22. Appellants argue that the trial court's award of summary judgment on the issue of punitive damages was premature. The Mississippi Supreme Court has held that evidence indicating misrepresentation and concealment as well as arson involving the insured, as we have in this case, seen in the light most favorable to the non-moving party, was sufficient to create a legitimate or arguable reason for the denial of the claim for punitive damages. State Farm Fire and Cas. Co. v. Simpson, 477 So.2d 242, 252 (Miss.1985). In Scott v. Transport and Indemnity Company, 513 So.2d 889, 896 (Miss.1987), the court held that even the absence of a "legitimate and arguable reason" in the refusal of the insurer to pay contents and total loss under a truck policy did not constitute a basis for submitting the issue of punitive damages to the jury without establishing that the insurer acted with gross negligence or malice. Applying this logic to the case at bar, it follows that since there is no evidence to indicate that the denial of Gerald Wilson's claim was based upon willfulness or gross disregard for his rights, there is no basis for the submission of the issue of punitive damages to the jury. We therefore find no error in this issue not having been submitted to the jury as a result of summary judgment having been granted.

CONCLUSION
¶ 23. We find that Wilson's misrepresentations on his application for insurance coverage fall into two categories under the contract with State Farm, rendering it void under the Concealment and Fraud section of the policy, and include those misrepresentations regarding: (1) non-renewal, and (2) claims history. A material misrepresentation under either category would have rendered the policy void ab initio. In Mississippi, a material misrepresentation in an application for an insurance policy allows the insurer to void or rescind the policy. Coffey v. Standard Life Ins. Co., 238 Miss. 695, 120 So.2d 143, 148-49 (1960). It is evident that the risk *922 of insuring one with Wilson's history is precisely what the questions on State Farm's application regarding loss history and insurance history were designed to prevent. In addition, we do not find that estoppel is applicable or that the issue of punitive damages should have been submitted to a jury. Finding no error, we affirm.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.