CHANDLER, J.,
Dissenting:
¶ 27. I respectfully dissent. I believe Kossuth Trucking has established a question of material fact as to whether an agency relationship existed between Caterpillar and MHC, including Caterpillar’s duty to properly train MHC mechanics, which renders summary judgment inappropriate. I base my conclusion upon the following facts.[2]
¶ 28. Caterpillar’s marketing program employs two levels of personnel to market its manufactured parts. It refers to these two levels of personnel as “Dealers” and “Second Level Dealers” or “Users.” Each Dealer has a specified territory. The Dealer is responsible for making sure all Second Level Dealers/Users within its territory have the proper tools including any specialized tools as specified by Caterpillar. Second Level Dealers/Users must also keep on hand sufficient Caterpillar parts to meet their maintenance obligations.
¶29. MHC is a Second Level Dealer/User and pursuant to its contract is required to “provide adequate replacement parts, service facilities and service personnel qualified to service Caterpillar products.” [3] Caterpillar reserved the right to terminate MHC at any time. As a Second Level Dealer/User, MHC used Caterpillar trade and service marks and employed certified Caterpillar mechanics. MHC was subject to on-site visits by Caterpillar executives.
¶ 30. The following language serves as an example of the control Caterpillar held over MHC. “Caterpillar, through such persons as it may designate shall have the right at all reasonable times to inspect all of User’s places of business and to examine the services rendered by User to verify User’s compliance with the requirements of this agreement.” The agreement is entitled “Trademark and Service Mark Agreement” and it begins by referring to the document as “The Operating Agreement,” stating that “Caterpillar, Inc. (herein called ‘Caterpillar’) and User agree.... ” MHC could only terminate its business relationship with Caterpillar by sending notice via certified mail to “Secretary, Caterpillar, Inc.” at its headquarters in Illinois. In short, all activities pertaining , to the marketing, sales and mainte *912 nance of Caterpillar manufactured parts by MHC were controlled by Caterpillar policy.
¶ 31. The truck engine which is the subject of this dispute is a Caterpillar engine. MHC requested and obtained authorization from Caterpillar to perform maintenance on this model engine. MHC, an authorized Caterpillar mechanic shop which employs certified Caterpillar personnel, did repair work on the engine. In performing the repair, the MHC mechanic completed a document which listed the customer’s complaints and the corrective measures taken to address those complaints. Included among the list of corrective measures taken was the following statement, “Piston reusable per Cat guidelines.” While the piston is not the faulty part in question, this language serves to show that MHC followed Caterpillar’s guidelines and that Caterpillar policy controlled the repair project.
¶ 32. Mr. Thomas Aaron Luther, a longtime diesel mechanic who was listed as an expert by Kossuth Trucking, opined that the negligent replacement of a sheared cam shaft key caused damage to the truck engine. The sheared key is an internal component of the Caterpillar engine. The key allows the timing gear on the cam shaft to jump timing resulting in the pistons “kissing” or striking the valves. Replacing only the sheared key rather than the entire cam shaft gear assembly as it is assembled at the factory caused the engine to continue to jump timing, resulting in severe damage to the engine.
¶33. Joseph Saver, a Caterpillar employee, stated that Caterpillar requires authorized dealers to attend Caterpillar-sponsored training courses in Illinois. The training includes instruction on truck engine repair. The Second Level Dealers/Users are further required to have their personnel trained by a Caterpillar authorized dealer. Caterpillar only warrants replacement parts which are installed by its certified mechanics. This practice provides incentives for potential customers to only use Caterpillar certified mechanics. As a certified Caterpillar repair shop, MHC could market Caterpillar parts to its customers when performing repair work on the customers’s Caterpillar truck engines, thus creating economic profits for itself as well as Caterpillar.
¶ 34. The majority applies the factors found in Miller v. Shell Oil Co., 783 So.2d 724 (Miss.Ct.App.2000) to the facts in this case and concludes that a jury trial is unwarranted. I differ with the majority’s conclusion. I conclude that an application of the factors found in Miller shows Kossuth Trucking has met its burden relative to its claims based upon apparent authority and failure to properly train.
¶ 35. In Miller, this Court found that a question of material fact regarding agency did exist where a service station held itself out to the public as being under the authority of Shell Oil. Id. at 729(¶ 18). This Court found the facts in Miller to create an “indicia” of control, whereby the service station “induced members of the public doing business with its agent to believe they were doing business with Shell.” Id. Likewise, I find the facts in the present case to sufficiently meet the Miller test, and I would reverse and remand for a trial on the merits as to these two claims.

. All reasonable inferences favor the non-movant in accordance with our summary judgment standard of review. See Miss. Ins. Guar. Ass’n v. Harkins & Co., 652 So.2d 732, 735 (Miss.1995).

. Caterpillar Inc. Trademark and Service Mark Agreement.