**TWIN CITY BANK, et al.**

v.

**VEREX ASSURANCE INC.**

**Civ. No. LR–C–88–554.**

United States District Court,
E.D. Arkansas, W.D.

Feb. 15, 1990.

David A. Couch, Wallace, Dover & Dixon, Little Rock, Ark., for plaintiffs.

Overton S. Anderson and Frances E. Scroggins, Anderson & Kilpatrick, Little Rock, Ark., for defendant.

## ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before this Court is defendant's August 8th motion for summary judgment supported by brief, exhibits and a separate statement of undisputed material facts. Plaintiffs responded on August 22nd with brief, exhibits and a statement of facts which they contend are in dispute. Defendant filed a reply with additional exhibits on October 6th.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Civil Procedure Rule 56. "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law."

*Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989).

Local Rule 29 provides that a party moving for summary judgment must file a separate, short and concise statement of material facts as to which it contends there is no genuine issue to be tried. The rule further provides that unless the non-moving party files a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried, all material facts set forth in the moving party's statement will be deemed admitted.

The following facts in defendant's Rule 29 statement are not disputed by plaintiffs' responding statement or any exhibits:

1. Kenneth D. and Debra D. Wallace applied for a residential home loan from Twin City Bank (TCB) on or about January 25, 1984, to purchase a house located at 4925 Francis, North Little Rock, Arkansas.

2. Lynn Davis, a loan processor employed by TCB, processed the Wallace loan application. Ms. Davis prepared the final residential loan application and collected the documents which she submitted to defendant. The documents formed the application for mortgage insurance for the Wallace loan.

3. The Wallace loan application and related loan documents were submitted by TCB to defendant.

4. The application for mortgage insurance coverage for the Wallace loan was underwritten by defendant in April of 1984.

5. Arkansas Housing Development Agency (AHDA) required approved lenders to obtain pool mortgage insurance coverage on the loans which were to be sold to AHDA.

6. TCB requested that defendant issue primary and pool mortgage insurance coverage for the residential home loan made to the Wallaces.

7. TCB was the agent of AHDA when TCB requested that defendant issue pool coverage for the Wallace loan.

8. The loan documents submitted to defendant did not disclose the existence of a personal loan of $1,917.62 or the existence of an automobile loan in the amount of $8,802.24. These loans were obtained by the Wallaces from Worthen Bank and Trust Company.

9. The residential home loan application represented that a 5% equity investment had been made by the Wallaces.

10. It is an accepted principle in the mortgage insurance industry that when a borrower has made an equity investment in the transaction, the borrower is less likely to default on the loan.

11. The amount of down payment made by the borrower is a material factor evaluated by defendant in deciding whether to issue mortgage insurance coverage relative to a mortgage loan. The amount of the down payment made by the borrower which is an equity investment is material because the risk of insuring a loan decreases as the amount of the borrower's equity increases.

12. Debt ratio is an important factor in evaluating the risks associated with mortgage insurance because it is indicative of the borrower's ability to repay the loan.

13. Upon learning of what it considered to be misrepresentations contained in the Wallace loan application, defendant promptly rescinded the mortgage insurance certificates relating to the Wallace loan.

14. Defendant returned all premiums paid by TCB and AHDA for mortgage insurance coverage on the Wallace loan.

Defendant contends that it relied on TCB to verify that the information contained in the application and supporting documents was accurate and valid when it evaluated the risks associated with issuing coverage for the loan. It asserts that the Wallaces did not make a 5% equity down payment since the source of the funds for the down payment was an unsecured loan obtained by them from Worthen Bank and it would not have issued coverage if it had known that fact. Defendant also states that it would not have issued coverage if it had known of the automobile loan since that materially affected the ability of the Wallaces to repay the home loan. Defendant

argues that as these misrepresentations contained in the Wallace application submitted by TCB were material to the risk associated with issuing mortgage insurance coverage for that loan, it is entitled to summary judgment as a matter of law.

·Plaintiffs state that the application submitted to defendant did not contain nor constitute a representation by TCB that the statements contained in the Wallace loan documents were true and correct and that defendant did not reasonably rely on TCB to verify the information contained in the Wallace loan application and documents. They continue that the Wallaces did make a 5% equity down payment so that defendant's risk was not increased. Plaintiffs assert that the existence of the $8,802.24 automobile loan did not materially affect the risk to defendant nor the debt ratio. They argue that the "misrepresentations" were not material and defendant, had it known of the loans, would have issued the policy anyway.

In his deposition, Kenneth Wallace testified that he advised the female at TCB, whom he normally did business with, that he had received approval for an automobile loan and the amount of the monthly payments since he would wait on the car if that loan would keep him from getting the house. Lynn Davis Narkinsky's deposition reveals that while she did not take the initial application for the home loan, she made all other changes such as the notation of $184 which was then scratched out and marked "paid" in the space on the handwritten application for automobile loans. She could not explain where she had obtained that figure or why it had been scratched out and marked "paid". The affidavit of Paul Lawson, a vice-president with Worthen, states that on March 6, 1984, Kenneth Wallace was approved for an automobile loan of $8,802.24 for a Nissan Sentra with 48 monthly payments of $183.38.

Lawson's affidavit further shows that on April 13, 1984, the Wallaces were approved for a loan of $1,800 (the net amount of a $1,912 loan), secured only by their signatures, for the purpose of making a down payment on a house. Both of those loans from Worthen were outstanding on April 18, 1984. Both the handwritten application of January 25, 1984, as changed by Davis, and the final application executed by the Wallaces on April 18, 1984, at the time of the closing, state that the source of the down payment was to be a gift letter of $1,700 and cash. A written statement by Kenneth's father dated January 29, 1984, declares that he is giving his son $1,700 as a gift for the down payment on the house. In a letter received by TCB on May 9, 1988, Kenneth wrote that he did receive a gift from his father, but the money was spent before closing for a stove, refrigerator and other items to clean up the house.

The uncontroverted evidence demonstrates that neither one of the Worthen loans was reflected in the application and documentation furnished to defendant by TCB. Furthermore, this evidence shows that TCB was informed of the automobile loan prior to the execution of the final application at closing and that the source of the down payment was not a gift letter, but the result of an unsecured loan from Worthen. Although plaintiffs assert that the Wallaces quickly paid off the $1,800 loan with an income tax refund that could have been listed as an asset, they did not provide any *evidence* to support that assertion. Therefore, the Wallaces did not make a 5% equity down payment on the house as required and defined by Section 3.1 C(1) of the AHDA's lender's guide and required by defendant's guidelines before coverage is issued since the down payment was made from the proceeds of an unsecured loan obtained from Worthen.

The August 3rd affidavit by John H. Peiss, an attorney and former underwriter with defendant, explains that a borrower's total debt ratio is defined as the amount of a borrower's total monthly payments, including the total monthly housing payment, divided by the borrower's stable monthly income. This ratio is considered crucial since it serves as an indicator of the borrower's ability to repay the mortgage loan for which coverage is to be provided and the mortgage insurer's risk of default increases when the borrower's debt ratio is

higher. Peiss continues in his supplemental October 5th affidavit that defendant calculated the Wallaces' stable income as $1,800 and the underwriting worksheet exhibit indicates that information was communicated to and acceptable to TCB. He states that the Wallaces' total debt ratio was computed to be 34% by dividing the disclosed monthly obligations of $598.00 by the stable monthly income of $1,800.00. He states that when the undisclosed automobile loan ($184 monthly) is added to the stable monthly obligations resulting in a total of $782, the Wallaces' total debt ratio becomes 43.44% which is greater than the guidelines allow.

In their brief, plaintiffs rely on defendant's operation manual which provides that the total debt ratio cannot exceed 33–38% of the borrower's gross monthly income. Plaintiffs, using $2,468 as the Wallaces' gross monthly income, figure that even when the automobile loan is added to the other debts for a total of $767.36, the debt ratio is 31% which is under the acceptable maximum. The Peiss affidavits and the underwriting worksheet all define the stable monthly income as $1,800 (the Wallaces' combined salaries) and defendant's calculations were made on that basis. Plaintiffs have not countered with the guidelines for or definition of "gross monthly income".

The Peiss affidavits reveal that underwriting by a mortgage insurance company is customarily referred to as "review underwriting". Since industry standards require a mortgage insurer to notify a lending institution of its decision to issue a certificate of insurance within 24 to 48 hours after receipt of the application, the insurance company must rely entirely upon the information contained in the loan documentation submitted by the originating lender. This reliance on the lender is the standard custom and practice in the mortgage insurance industry including defendant. In a May 25, 1988 letter to the manager of the firm that defendant retained to investigate plaintiffs' claim under the policy, Debbie Carroll, who was the Loan Servicing Manager of TCB, stated that defendant insured the loan based on the facts that TCB provided and the information provided was as TCB had received it. Thus, defendant relied upon TCB to verify that the information contained in the Wallace application and supporting documents was accurate and relied upon the validity of that information when evaluating the risks associated with issuing the coverage for the loan. Plaintiffs have not submitted any evidence to controvert these facts.

Those affidavits further establish that defendant, in keeping with the standard custom and procedure in the mortgage insurance industry, issues a commitment/certificate of insurance which notifies a lending institution that the carrier has agreed to issue coverage for the loan described in the loan documentation. One term and condition in the Wallace Commitment for Insurance was a loan in which the loan-to-value (LTV) ratio was 95%. Peiss clearly states that the misrepresentations contained in the Wallace application submitted by TCB were material to the risk associated with issuing mortgage insurance coverage for that loan since the automobile note materially affected the ability of the Wallaces to repay the home loan and the failure to make a 5% equity investment materially increased the risk of insuring the home loan. "The LTV ratio is material because is measures risk, the touchstone of an insurance contract." *Verex Assur., Inc. v. John Hanson Sav. and Loan*, 816 F.2d 1296 (9th Cir.1987). The Peiss affidavits demonstrate that defendant would not have issued mortgage insurance coverage for the Wallace home loan if it had known of the automobile loan or that a 5% equity investment had not been made. Moreover, Narkinsky, in her deposition, stated that she represented to defendant that the numbers for the home loan conformed to the transmittal summary and that if the numbers did not so conform, defendant would reject coverage. Plaintiffs have not presented any evidence to dispute these facts.

■ An insurance policy will be void if a material misrepresentation, which was relied upon by the insurance company, is

made on the application for coverage. *Countryside Casualty Co. v. Orr*, 523 F.2d 870 (8th Cir.1975). The insurance carrier has no duty to investigate the accuracy of the facts as set forth in an application. *Id.; MFA Mutual Ins. Co. v. Dixon*, 243 F.Supp. 806 (W.D.Ark.1965). Furthermore, the good faith or lack of knowledge by the insured of the misrepresentations is irrelevant. *Life and Casualty Ins. Co. of Tenn. v. Smith*, 245 Ark. 934, 436 S.W.2d 97 (1969). See also, *TCF Mortg. Corp. v. Verex Assur., Inc.*, 709 F.Supp. 164 (D.Minn. 1989). Although involving life and disability policies, Ark.Code Ann. § 23–79–107(a) (Supp.1989) provides in part as follows:

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3) The insurer in good faith would not have issued the policy or contract ... if the facts had been made known to the insurer as required by the application for the policy or contract or otherwise.

■ When the above law is applied to the undisputed facts, the Court must find that the Wallace home loan application and supporting documents contained material misrepresentations as to the risk of issuing mortgage insurance and that defendant would not have issued coverage if it had known of the lack of a 5% equity investment or the automobile loan. As the policy was voidable, defendant rightfully rescinded mortgage insurance coverage for the Wallace loan as a matter of law.

Accordingly, defendant's August 8th motion for summary judgment is hereby granted.

IT IS SO ORDERED.