**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Linda GOOD, Appellee–Plaintiff,**

and

**Randall Good, Appellee–Third Party Defendant.**

No. 85A04–0905–CV–240.

Court of Appeals of Indiana.

Nov. 24, 2010.

Rehearing Denied Jan. 21, 2011.

Charles T. Jennings, Thomas R. Haley III, Jeffrey W. Ferrand, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellant.

Mark C. Guenin, Emily C. Guenin–Hodson, Guenin Law Office, P.C., Wabash, IN, David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Allied Property and Casualty Insurance Company ("Allied") appeals judgments in favor of Linda and Randall Good ("the Goods"). Allied presents five issues and Linda raises one issue on cross-appeal, but we find one dispositive: whether the trial court erred by denying Allied's motion for summary judgment because misrepresentations on the application for insurance made Linda's policy void *ab initio*. Because the uncontradicted evidence indicates Linda misrepresented the Goods' cancellation history on the application for homeowners insurance and Allied would not have issued the policy if it had known the truth about their history, the trial court erred by denying Allied's motion for summary judgment. We accordingly reverse and remand for entry of judgment for Allied.[1]

## FACTS AND PROCEDURAL HISTORY

In July 2002, Linda completed an application for homeowners insurance with Allied. The application was signed by Linda only, and the policy was in her name only. The policy was to be in effect for one year, beginning July 2, 2002. On March 16, 2003, a fire destroyed the Goods' home and all its contents. They filed a claim with Allied, which neither paid nor denied the claim due to an ongoing investigation regarding the cause of the fire.

On March 9, 2004, Linda sued Allied for breach of contract based on Allied's non payment. Allied filed a third-party complaint against Linda's husband Randall, alleging he made false statements regarding the fire,[2] and a counterclaim against Linda for the same. Thereafter, Allied filed a motion for summary judgment, asserting its contract with Linda was void *ab initio* because Linda had misrepresented her cancellation history on her application for insurance. The trial court denied that motion. A trial commenced on December 12, 2008, and ended in a mistrial. Allied appealed the mistrial and we

---

1. As we reverse the denial of Allied's motion for summary judgment, we need not address whether the court erred in denying Allied's motions for judgment on the evidence.

2. The policy states Allied will not provide coverage to "insureds" if, whether before or after a loss, an "insured" has "(1) Intentionally concealed or misrepresented any material fact or circumstance; (2) Engaged in fraudulent conduct; or (3) Made false statements; relating to this insurance." (App. at 308.) The contract defined "insured" as "you and residents of your household who are (1) your relatives." (*Id.* at 291–92.) Randall was therefore an "insured," so any misrepresentations, fraudulent conduct, or false statements by Randall would violate the terms of Allied's contract with Linda and absolve Allied of any contractual obligation to pay for Linda's damages.

affirmed. *Allied Prop. and Cas. Ins. Co. v. Good,* 919 N.E.2d 144 (Ind.App.Ct.2009), *trans. denied.*[3]

A second trial began January 12, 2009. It was bifurcated into a phase addressing Linda's breach of contract claim and Allied's third-party claims against Randall, and a phase addressing Allied's counterclaims. After hearing all evidence the court entered directed verdicts for the Goods. The issue of damages was presented to the jury, which awarded Linda $1,052,977.19.

## DISCUSSION AND DECISION

■■■ Allied was entitled to summary judgment because Linda misrepresented on the insurance application that she had never had an insurance policy cancelled. Our standard for reviewing a summary judgment was set forth by our Indiana Supreme Court in *Dugan v. Mittal Steel USA, Inc.,* 929 N.E.2d 184, 185–86 (Ind. 2010):

> A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

Construction of the terms of a written contract presents a pure question of law; accordingly, our review is *de novo.* *Harrison v. Thomas,* 761 N.E.2d 816, 818 (Ind. 2002). More specifically, the proper interpretation of an insurance policy generally presents a question of law that is appropriate for summary judgment. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243 (Ind.2000).

Whether Linda misrepresented her cancellation history hinges on the interpretation of the word "ever." Allied's application for insurance asks for the name of the applicant's current insurance company, the number of years with that company, and the expiration date of that policy. On the same line, there is a space to answer the query, "Coverage ever declined, cancelled, or non-renewed." (App. at 7940.) The Goods argue "ever" refers only to the policy in effect when they filed the application, while Allied argues "ever" refers to the applicant's entire insurance history.

■■■ When policy language "is clear and unambiguous," the language of the policy is given its plain meaning. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002). When the language is ambiguous, it is "construed strictly against the insurer" and is "viewed from the standpoint of the insured." *Id.* at 528. But there is ambiguity "only if reasonable persons would differ as to the meaning of its terms." *Id.* In insurance policies, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Id.*

■■■ "Ever" means "at any time." *Webster's Third New Int'l Dictionary* 788

---

3. In that appeal, Allied did not raise and we did not address the denial of Allied's motion for summary judgment. *See Allied Property,* 919 N.E.2d at 151. Parties may challenge interlocutory orders on appeal from the final judgment. *Bojrab v. Bojrab,* 810 N.E.2d 1008, 1014 (Ind.2004).

(1976). *See also Home Ins. Co. v. Cavin,* 162 Miss. 1, 137 So. 490 (1931) (home insurance policy voided because insured falsely denied that he had ever sustained a fire loss; the court found the language of the query to be unambiguous, and the insured's incorrect interpretation of "ever" did not relieve him from the penalty of his false assertion). In the contract, "ever" modified the words "declined, canceled, and non-renewed." (App. at 7940.) "Decline" is "to refuse to undertake, undergo, engage in." www.merriam-webster.com/dictionary/decline (last accessed September 9, 2010). "Cancel" is defined as "to destroy the force, effectiveness, or validity of." www.merriam-webster.com/dictionary/cancel (last accessed September 9, 2010). "Renew" means "to grant or obtain an extension of." www.merriam-webster.com/dictionary/renew (last accessed September 9, 2010).

The Goods claim "ever" refers only to the policy in effect when they filed the application—that is, the application was asking if the MetLife homeowners' policy Linda had when she applied for the Allied policy had ever been declined, cancelled, or not renewed. The cancellation question could not have been limited, as the Goods argue, to the "current company." (App. at 667.) It is not possible that the current insurer had "refuse[d] to undertake, undergo, engage in" insuring the applicant for the current policy. Under the Goods' interpretation, there could be no "current company." Similarly, if the "current company" had "destroy[ed] the force, effectiveness, or validity of" the Goods' coverage, it could not be their "current company," because the Goods would no longer have a contract of insurance with that company. As there could be no current company if coverage had been canceled or denied, we decline their invitation to so interpret the application's language. *See Utica Mut. Ins. Co. v. Precedent Companies, LLC,* 782

N.E.2d 470, 474 (Ind.Ct.App.2003) ("When interpreting an insurance policy, we give plain and ordinary meaning to language that is clear and unambiguous.").

Because "ever" means "at any time," we hold the query, "Coverage ever declined, cancelled, or non-renewed," (App. at 667), refers to any policy the Goods "ever" applied for or had "at any time" in the past.

Linda answered "no" to that query on the application, and her answers in a deposition and an interrogatory designated as evidence in support of Allied's motion for summary judgment show that answer was false. In her deposition, Linda acknowledged at least one insurer, and possibly three, had cancelled policies she and Randall had held:

Q: Oh, you don't think—I thought you said before Met cancelled you for the gas leak?

A: We got cancelled, but we got another policy through them. Maybe it—I think it was West-, Westfield that cancelled us. Then we got Met Life, then we switched from Beauchamp & McSpadden because we'd been talking to other people and their policies were cheaper and we thought we'd get a better buy if we went to WIA.

(*Id.* at 416.) In her response to the interrogatory, "Have you ever had insurance coverage cancelled for any reason?" Linda replied, "Meridian cancelled us sometime in 1994 or later. I don't remember exactly when they cancelled us. Scheerer Insurance was the agency. Westfield Insurance cancelled us I believe in 1999. Beauchamp and McSpadden was the insurance company." (*Id.* at 679.) The Goods did not designate any evidence that contradicted Linda's statements designated by Allied. There was no genuine issue of fact about whether Linda misrepresented the

Goods' cancellation history on the application.

 We next turn to whether that misrepresentation was material. A misrepresentation on an application for an insurance policy is "material" if the fact misrepresented, had it been known to the insurer, would have reasonably entered into and influenced the insurer's decision whether to issue a policy or to charge a higher premium.[4] *Am. Nat. Fire Ins. Co. v. Rose Acre Farms, Inc.*, 107 F.3d 451, 458 (7th Cir.1997) (applying Indiana law). A material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind.1997). An insurance company has no right to rescind a policy "where it had knowledge of the facts notwithstanding the material misrepresentations, or where a reasonable person would have investigated further." *Id.* at 674. However, "the insurer may rely on representations of fact in the application without investigating their truthfulness," and has "no duty to look beneath the surface" of the representations on the application.[5] *Id.*

---

4. As explained below, Linda's misrepresentation was undoubtedly "material." Our opinion therefore should not, and cannot, be read to encourage, or even permit, parties to comb through insurance applications in hopes of finding *any* false statement in an effort to reduce premiums or avoid paying benefits. Only a "material" false representation could permit either result.

5. There presumably are numerous resources available to insurance companies that would permit the insurers to conduct in-depth investigations, for a price, of persons applying for their policies. However, our Indiana Supreme Court's language in *Guzorek* leaves no doubt that insurers are not obliged to routinely undertake such investigation. *Guzorek*, 690 N.E.2d at 674 ("the insurer may rely on representations of fact in the application without investigating their truthfulness, unless there is some reason to believe the representations are false" and has "no duty to look beneath the surface of [an applicant's] representations"). *See also Chawla v. Transamerica Occidental Life Ins. Co.*, 440 F.3d 639, 647 (4th Cir.2006) (under Maryland law, insurer has no duty to investigate insured's statements on application); *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1159–60 (10th Cir.2009) (under Colorado law, an insurer must investigate only if it has "sufficient information that would have put a prudent man on notice and would have caused him to start an inquiry"); *Adriaenssens v. Allstate Ins. Co.*, 258 F.2d 888, 891 (10th Cir.1958) (under Oklahoma law, insurer has no duty to investigate absent "exceptional or unusual circumstances"); *Co-*lumbian Nat. Life Ins. Co. of Boston, Mass. v. Rodgers*, 116 F.2d 705, 707–08 (10th Cir. 1940) (under Kansas law, insurer must investigate only when put on notice of cause or reason for inquiry); *Twin City Bank v. Verex Assur. Inc.*, 733 F.Supp. 67, 71 (E.D.Ark. 1990) (insurer has no duty to investigate insured's statements on application); *Ingram v. Old Line Ins. Co. of Am.*, C98–2422 FMS, 1999 WL 430747 (N.D.Cal. June 21, 1999) (same); *Great Lakes Reinsurance PLC v. Barrios*, 08–20281–CIV–UNGARO, 2008 WL 6032919 (S.D.Fla. Dec. 10, 2008) ("The insured, not the insurer, has the duty to voluntarily disclose every material fact unknown to the insurer regardless of whether the insurer directly inquires about it."); *Office Furnishings, Ltd. v. Am. Family Mut. Ins. Co.*, 04 C 6699, 2009 WL 3852375 (N.D.Ill. Nov. 18, 2009) (insurer has no duty to investigate insured's statements on application); *Foremost Ins. Co. v. Bowden*, 2:04CV174 BESGWF, 2006 WL 1966745 (D.Nev. July 12, 2006) (same); *Mutual Ben. Life Ins. Co. v. Morley*, 722 F.Supp. 1048 (S.D.N.Y.1989) (insurer is entitled to rely on statements of insured); *Lewis v. Paul Revere Life Ins. Co.*, 80 F.Supp.2d 978, 999 (E.D.Wis.2000) (insurer has no duty to investigate insured's statements on application); *In re Tri–State Armored Services, Inc.*, 332 B.R. 690, 721 (Bankr.D.N.J.2005) (" 'the applicant's duty to candidly fill out an insurance application is not in any way abated', whether or not an insurer performs an investigation." (citation omitted)); *Amerson v. Gardner*, 681 So.2d 570, 572–573 (Ala.Civ.App.1996) (insurer has no duty to investigate insured's statements on

■ In *Guzorek*, our Indiana Supreme Court identified two approaches to determining whether a misrepresentation is material. Generally, "[u]nder either view, the materiality of the representation or omission is a question of fact to be resolved by the factfinder unless the evidence is such that there can be no reasonable difference of opinion." *Id.* (citing *Prudential Ins. Co. of Am. v. Winans*, 263 Ind. 111, 115, 325 N.E.2d 204, 206 (1975)).

■ The first approach, which applies in this circumstance, considers whether the insurer would have refused to write a policy for the insured or would have charged a higher premium had it known of the misrepresentation. *Guzorek*, 690 N.E.2d at 672–73. Even an innocent misrepresentation will render a policy voidable, unless the insurer was on notice of the misrepresentation and a reasonable person would have inquired further. *Id.* at 673.[6]

In support of its motion for summary judgment, Allied designated an affidavit from one of its underwriters that stated: "If Linda and Randall Good had disclosed the fact that they had coverage canceled by prior insurers (in this case multiple cancellations), Allied would not have issued the subject policy or would have charged a higher premium." (App. at 659.) The Goods did not designate any evidence to the contrary, and thus there was no genuine issue of material fact about the materiality of the misrepresentation made by Linda on the application for insurance: Allied relied on it to determine eligibility for a policy, and Allied would not have sold the policy had it known the truth. We also note that, although we found no Indiana decision addressing the materiality of a misrepresentation about an applicant's cancellation history, numerous jurisdictions have held such misrepresentations are, as a matter of law, "material misrepresentations." *See, e.g., Wilson v. State Farm Fire and Cas. Co.*, 761 So.2d 913, 918 (Miss.App.2000) (false statement regarding renewal status of prior policy was material misrepresentation); *Graphic Arts Mut. Ins. Co. v. Pritchett*, 220 Ga.App. 430, 469 S.E.2d 199, 202 (1995) (co-insured's false statements regarding cancellation history voids entire policy); *Nationwide Mut. Fire Ins. Co. v. Dungan*, 634 F.Supp. 674, 682 (S.D.Miss.1986) (concealment of

application); *Hornback v. Bankers Life Ins. Co.*, 176 S.W.3d 699, 705 (Ky.Ct.App.2005) (same); *Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767, 777 (Mo.Ct.App.2004) (same); *Crawford v. Manhattan Life Ins. Co. of New York*, 208 Pa.Super. 150, 221 A.2d 877, 886 (1966) (same); *Summit Ins. Co. v. Porcaro*, CIV.A. 99–2521, 2004 WL 1067920 (R.I.Super. May 5, 2004) (same); *Lane v. Travelers Indem. Co.*, 499 S.W.2d 643, 649 (Tenn.Ct.App.1973) (Before an insurer must investigate, "there must be a reason or cause for the further investigation and the insurer must be put upon inquiry by some fact or information in possession of the insurer."); *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383, 324 A.2d 223, 231 (1974) (insurer has no duty to investigate insured's statements on application); *Harper v. Fid. & Guar. Life Ins. Co.*, 234 P.3d 1211, 1218–19 (Wyo.2010) (same). We found no state or federal statutes or regulations that would require an insur-ance company to conduct such an investigation without notice of a defect in the statements made in the application.

6. The second approach applies when "rescission is attempted after a loss has been incurred." *Id.* In *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 415–16 (Ind.Ct.App. 2008), *reh'g denied, trans. denied*, we determined this second approach applies only to an attempted partial rescission of a policy, and we limited use of this second approach to the context of automotive financial responsibility laws: "[i]t is apparent that 'the law' to which the [*Guzorek*] court was referring was the financial responsibility law, not contract law, because general contract law plainly permits the complete rescission of a contract." *Id.* at 415. As Linda's policy with Allied was homeowners insurance, not car insurance, the second approach does not apply.

past cancellations on insurance application was material misrepresentation, and the insurance policy was therefore void *ab initio* ); *Prudential Prop. and Cas. Co. v. Cole,* 586 S.W.2d 433, 435 (Mo.Ct.App. 1979) (insured's failure to disclose recent insurance policy cancellation was material misrepresentation); *Globe Life and Acc. Ins. Co. v. Still,* 376 F.2d 611, 614 (5th Cir.1967) ("Under the law of Georgia such a false statement about rejection or cancellation of other insurance is a material misrepresentation and voids the policy as a matter of law."); *Hawkeye–Security Ins. Co. v. Gov. Emp. Ins. Co.,* 207 Va. 944, 154 S.E.2d 173, 176 (1967) (applicant's untrue answer to question regarding past cancellation history was material misrepresentation and rendered policy void *ab initio* ).

Based on the designated evidence, there was no genuine question of fact regarding the Goods' misrepresentation of their past cancellation history or its materiality. Therefore, the trial court erred by denying Allied's motion for summary judgment.[7] We reverse and remand for entry of judgment for Allied on all counts.

Reversed and remanded.

BARNES, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting.

The majority reverses judgment favoring Linda Good ("Good") on the ground that the trial court improperly denied Allied's motion for summary judgment. Because I disagree with the majority's interpretation of the application form and the materiality of Good's responses to certain items on that form, I respectfully dissent.

*Construction of the Application Form*

I cannot join with the majority opinion's construction of the application form Good submitted to Allied. In particular, I take a different view of the implication of the word "ever" as it exists on the application form Good completed in seeking insurance with Allied. (App.667.)

On the application form, the question regarding prior denials of coverage is presented thus:

INSURANCE COVERAGE

| Name of Current Company | Number of Years With Company | Expiration Date | Coverage Ever Declined, Cancelled, or Non–Renewed |
|---|---|---|---|
| Met Life Economy | | 7-2-02 | *N* |

(App.667.) The majority notes that the "Coverage Ever Declined, Cancelled, or Non-Renewed" item comes last in a single row of questions, all of which relate to the current insurance carrier. The majority then goes on to hold that despite its context, "ever" applies to any form of insurance coverage Good ever sought or had obtained, and that "[t]he cancellation question could not have been limited ... to the 'current company' " because "it is not possible" that MetLife Economy could have refused to insure Good by virtue of the fact that MetLife was Good's insurer at the time she filled out the application.

I cannot agree with this approach. Taking "ever" out of its context seems to me to disregard how a reasonable person could construe the question. Reading the

7. Linda requests appellate attorney's fees pursuant to Ind. Appellate Rule 66(E), which allows us to assess damages, including attorney's fees, if we find an appeal is frivolous or filed in bad faith. In light of our decision, we cannot so characterize Allied's appeal. Thus we decline Linda's request.

form as presented above, a reasonable person could indeed interpret the item about prior cancellations as pertaining to the current insurer—particularly since the section heading is "INSURANCE COVERAGE," not "Prior Insurance Coverage," "Coverage History," or the like. (App. 667.) An insurer could cancel an insured for failure to timely pay premiums, but later agree to extend coverage to that individual. A policy may also be cancelled when an insured selects a new insurance product offering from the same insurer before the end of the policy period for the existing contract.

Nor is it unreasonable to think that a single insurance company—even a current insurer—could, over the course of an individual's life, deny coverage or renewal at one point but be willing, under different circumstances, to extend coverage at another time. This phenomenon may well be known among those who have had homeowner's insurance in hurricane zones non-renewed [8] and later moved elsewhere and obtained coverage from the same company. It may also have occurred with individuals who were denied one form of coverage (e.g., automotive insurance) by an insurance carrier but were not denied homeowner's insurance by that same carrier. Thus, reasoning that "it is not possible" for a current insurer to have denied coverage to an insured in the past does not necessarily follow.

Additionally, the case to which the majority points for its interpretation of "ever" as applying to any coverage-related event seems inapposite. While the case, *Home Ins. Co. of New York v. Cavin*, includes the word "ever" in the question asked of the insured, the question posed is much clearer and more complete: "Have you ever suffered loss by fire, and if so, when and how did fire originate?" 162 Miss. 1, 137 So. 490, 490 (1931). The insured in that case claimed to have "understood the question to refer only to loss by fire on buildings covered by insurance." *Id.* As the trial court here noted in ruling on Allied's motion for judgment on the evidence, "Allied very easily could have asked ... have you or any person residing in your household ever, at any time, had any insurance coverage cancelled or not renewed?" (Tr. 1314.) Allied did not do this and, unlike the insurer in *Cavin*, may have received an accurate answer within the bounds of the question, properly construed, as it was posed to Good.

Given the range of reasonable interpretations of the question as presented on the form in light of the inferences favoring the insured that come from any possible ambiguity, *see Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind.2002), I cannot concur with the majority that the application unambiguously favors Allied's interpretation. I would hold that the prior cancellations question refers only to Good's insurance carrier at the time of the application—MetLife Economy—and would affirm the trial court on that ground.

*Materiality*

Affirming the trial court on the interpretation of the prior cancellations issue forecloses any need to address the materiality issue. Yet even if I could join with the

8. *See, e.g.*, Elliott Mittler, *A Case Study of Florida's Homeowners' Insurance Since Hurricane Andrew*, http://www.colorado.edu/hazards/publications/wp/wp96.html (last retrieved September 30, 2010); Tom Zucco, Insurance Crisis Fixed ? Check Your Mailbox, St. Petersburg Times, http://www.sptimes. com/2007/ 03/08/Business/Insurance_crisis_fixe.shtml (last retrieved September 30, 2010) (each discussing the effects of homeowner's insurance cancellation and non-renewal moratoria imposed by Florida in the wake of several hurricanes).

majority's interpretation of the prior cancellations question, I must part with its application of *Guzorek* to the issue of the materiality of Good's response to the application. I agree with the majority's assessment of the law on materiality in Indiana, but I cannot agree with its decision that Allied's affidavit establishes that there is no genuine issue of material fact as to the materiality of Good's failure to disclose prior insurance cancellations.

The majority approaches the materiality problem in part by noting that other jurisdictions have determined that, in cases similar to this one, omissions from insurance applications have been held to be material misrepresentations as a matter of law. While these cases are certainly helpful to the analysis, the Indiana Supreme Court has held that materiality is a question of fact and not of law. *Guzorek*, 690 N.E.2d at 673 (citing *Prudential Ins. Co. v. Winans*, 263 Ind. 111, 115, 325 N.E.2d 204, 206 (1975)). Thus we must consider the evidence of materiality put forth by Allied, and it is here that Allied's attempt to avoid its obligations under the policy fails.

Deciding materiality solely upon the contents of an affidavit stating that an insurer would have made a different underwriting decision had it known of the existence of an undisclosed fact is a tenuous thing.[9] As this Court has noted elsewhere, "summary judgment is inappropriate if a reasonable trier of fact could choose to disbelieve the movant's account of the facts" stated in an affidavit. *InsureMax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind.Ct.App.2008) (quoting *McCullough v. Allen*, 449 N.E.2d 1168, 1172 (Ind. Ct.App.1983), *trans. denied*). In order for there to be no genuine issue of material fact, all the evidence designated by the movant must support its position even after all inferences arising from that evidence are drawn in favor of the non-moving party. *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 185–86 (Ind.2010). That Allied relied upon Good's statement or lack thereof and issued the policy as a result is not enough. Under *Guzorek*, Good's omission must have been material to the risk insured, whether the insurer seeks complete or partial rescission of the contract. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672–74 (Ind.1997).[10]

The properly drawn inferences from Allied's own evidence do not show the absence of a genuine issue of material fact as to whether Good's omission was material to the risk assumed by Allied in issuing

---

**9.** The majority holds that it was enough that Allied submitted an affidavit stating the materiality of Good's omission, and that Good's failure to produce any countervailing evidence is the end of the matter. This approach raises the prospect that an affidavit from an insurer could never be successfully opposed by an insured upon summary judgment. I am concerned that the majority's approach could ultimately lead to an unqualified rule that there is no genuine issue of material fact so long as the insurer can produce an affidavit in support of a motion for summary judgment that simply restates the rule in *Guzorek* with respect to whatever misrepresentation is claimed as a defense or ground for relief by the insurer.

**10.** *Guzorek* presents two options for an insurer when addressing a material misrepresentation. One permits the insurer to rescind the policy entirely. The other allows the insurer to extend coverage, subject to the limitation that the policy is rescinded as to those risks regarding which a material misrepresentation was made. Another panel of this court has addressed the automotive insurance context of *Guzorek* when it declined to extend the partial rescission approach in *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405 (Ind.Ct.App. 2008), *reh'g denied, trans. denied*. I am not as convinced as the majority (or as the *Allianz* court) that the partial rescission option is limited exclusively to automotive insurance. Allied does not seek partial rescission here, and thus we need not reach that issue.

the insurance policy.[11] Extracting the rule of law from *Guzorek*, Allied presented an underwriter's affidavit asserting that, had Good disclosed prior denials, cancellations, and non-renewals, Allied would have charged a higher premium or declined to underwrite insurance for Good altogether. (App.659.)

Yet the true materiality to Allied of Good's insurance and loss history is put into doubt by Good's answer of "yes" to the question regarding losses for the three years prior to completing the Allied application for insurance. That question and its answer appear thus:

**PRIOR LOSSES—Any losses over the previous three years**

Any Losses During the Last 3 Years? *Y*

| Date | Type of Loss | Description of Loss | Amount Paid |
|------|--------------|---------------------|-------------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

(App.667.) Despite her answer and ample space on the form to provide detail, Allied did not seek additional information on actual losses that Good had sustained even though Good did not provide the requested prior loss history. (App.667.) This failure certainly raises the question of whether a reasonable person would have inquired further, but Allied did not do so. *See Guzorek*, 690 N.E.2d at 674. Allied's failure to investigate recent losses, which it acknowledged in its own affidavit is important in assessing the risks of underwriting,[12] throws its affidavit into doubt and makes summary judgment inappropriate—especially where the application form Good submitted was attached as an exhibit to the affidavit. *See InsureMax*, 879 N.E.2d at 1190.

Good's affirmative answer to the question on prior losses also has the effect of putting Allied on notice that further investigation into Good's application was needed before a policy could be written. I agree with the majority that *Guzorek* imposes no duty upon an insurer to inquire into the representations made by an insured unless the insurer already knew the facts behind the misrepresentation or unless "a reasonable person would have investigated further." *Guzorek*, 690 N.E.2d at 674. But I differ on the application of that standard. Good provided Allied with some very limited information that she had suffered losses—a "yes" without details requested by the application form—that would, on the terms of Allied's affidavit, be material to the underwriting risk. Yet she did not

**11.** Because I believe Allied's own evidence is not sufficient to establish the absence of a genuine issue of material fact, Good would have no burden to produce her own evidence. *See Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 185–86 (Ind.2010) (requiring the non-movant to produce evidence in its favor in order to demonstrate a genuine issue of material fact where the movant's designated evidence establishes the absence of such).

**12.** Specifically, "Allied needs truthful and accurate information requested in the applications for insurance completed by the insureds to accurately make decisions involving whether to issue a policy or charge a certain premium." (App.659.)

provide complete information on these matters, and Allied failed to inquire into this omission. Allied cannot be heard to complain now that it was misled on one issue when its conduct reveals that, on a related issue with materiality to the underwriting risk, it had notice but made no inquiry.

The cases the majority cites as examples of material misrepresentation as a matter of law do not, in my view, buttress the majority's opinion.[13] The question posed by Allied, "Coverage Ever Declined, Cancelled, or Non–Renewed," (App.667) compares unfavorably with the examples cited by the majority because of its lack of specificity. Aside from the question of proper construction, the placement of Allied's question, its relative lack of clarity, and Allied's failure to follow up on Good's answer to the item on prior losses lead me to conclude that Good's answers were simply not material to Allied except as an attempt to seek some form of "post-claim underwriting" that would allow Allied to reassess the risk after—and because—Good made her claim.

Allied asks this court to agree that its question is as clear as those in the cases cited by the majority. But Allied's question is less artfully and precisely asked than those in the examples cited by the majority. It instead serves as one more piece of evidence that, with inferences properly drawn, there is a genuine issue of material fact as to the materiality of Allied's underwriting decisions regarding the prior cancellations question.

On a clean slate, perhaps we could write a different story. But even if I could agree with the majority's interpretation of the application form, where the information clearly put Allied on notice to inquire further into Good's insurance history, I cannot join in its application of *Guzorek* to reverse the trial court's denial of Allied's motion for summary judgment.

I must therefore respectfully dissent.

13. The cases the majority cites from other jurisdictions often deal with application forms that make much more explicit requests for information than the form used by Allied. In *Wilson v. State Farm Fire & Cas. Co.*, an application question asked, "Has any insurer or agency canceled or refused to issue or renew similar insurance to the named applicant or any household member within the past three years." 761 So.2d 913, 917 (Miss. Ct.App.2000). Another case indicates that a material misrepresentation occurred when an insured "answered 'no' to the question whether he had had any insurance policy cancelled within the three years preceding the application when, in fact, he had three such cancellations." *Graphic Arts. Mut. Ins. Co. v. Pritchett*, 220 Ga.App. 430, 430–31, 469 S.E.2d 199, 201 (Ga.Ct.App.1995). Still another holds as material a misrepresentation to the question "Any policy cancelled or non-renewed?" *Nationwide Mut. Fire Ins. Co. v. Dungan*, 634 F.Supp. 674, 676 (S.D.Miss.1986), aff'd, 818 F.2d 1239 (5th Cir.1987). Still another involved an application that asked, "Has any insurance company (including this Company) ever refused, cancelled, refused to renew, or given notice of intention to cancel or refuse, any automobile insurance for you or any member of your household?" *Hawkeye–Sec. Ins. Co. v. Gov't Emp. Ins. Co.*, 207 Va. 944, 946, 154 S.E.2d 173, 175 (1967).

While the question posed by Allied is similar to that asked of the insured in *Dungan*, the procedural posture of *Dungan*—judgment after a bench trial, 634 F.Supp. at 675—does not provide the support for summary judgment sought by the majority's opinion.