# FOR PUBLICATION



FILED
Apr 23 2012, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN H. HALSTEAD**
Querrey & Harrow
Merrillville, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for Lake and Tonya Poage:
**THOMAS D. BLACKBURN**
Blackburn & Green
Fort Wayne, Indiana

**KARL L. MULVANEY**
**NANA QUAY-SMITH**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| OMNI INSURANCE GROUP, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1105-CT-208 |
| | ) | |
| LAKE POAGE, TONYA POAGE, | ) | |
| CODY BAUER, JILL BAUER, GARY BAUER, | ) | |
| and ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-0902-CT-102

**April 23, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Omni Insurance Group appeals a summary judgment for Allstate Insurance Co., Lake and Tonya Poage, and Cody, Jill, and Gary Bauer (collectively, "the Poages"), and the denial of its own motion. As there is a genuine issue of material fact as to whether a driver involved in a collision was a resident of the Omni policyholder's residence, summary judgment for the Poages was improper. Therefore, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On April 16, 2008, Cody Bauer was driving a car that collided with a motorcycle driven by Lake Poage. Cody's mother Treva Bauer owned the car, which Cody was driving with her permission. Treva was insured by Omni. The policy provided liability coverage to Treva, who was the named insured, to family members who used Treva's car, and to any persons who used the vehicle with her permission. But the policy explicitly excluded liability coverage for bodily injury resulting from the use of a vehicle by "any resident, including a **family member**, of **your** household who is not listed in the Declarations page" (hereinafter "Exclusion 15"). (Appellant's App. at 53).[1] The collision coverage contains a similar exclusion for loss to the covered auto when it is driven by "a resident of your household . . . not listed on the Declaration page." (*Id*. at 70.) The policy does not define "resident." Cody

---

[1] Ind. Appellate Rule 46(A)(6) provides facts in a Statement of Facts "shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)." In its Statement of Facts, Omni quotes language from a number of provisions throughout the policy, but in support directs us only to "(App. p. 40)." (Appellant's Br. at 3.) Page 40 of the Appendix is the cover page of Omni's Exhibit A, which includes the policy and some other documents. That exhibit spans forty-five pages of the Appendix. Omni does not specifically indicate where within those forty-five pages the various policy provisions to which it refers might be found. We remind Omni's counsel that we will not sift through a record to locate error so as to state an appellant's case, *Barth v. Barth*, 693 N.E.2d 954, 956 (Ind. Ct. App. 1998), *trans. denied*, and that noncompliance with the appellate rules that substantially impedes our ability to reach the merits of an appeal can result in waiver of an argument on appeal. *Galvan v. State*, 877 N.E.2d 213, 216 (Ind. Ct. App. 2007).

was not listed on the declarations page.

On the date of the collision, Cody was spending the night at Treva's residence. Treva shared joint legal custody of Cody with Cody's father. After their divorce they split physical custody. Cody had his own bedroom at both residences and kept belongings at both places. He considered both residences to be his home. At the time of the collision, Treva was moving from Churubusco to Columbia City, and when she moved Cody changed schools. Cody used his father's address on his driver's license and received his mail there. Cody was a listed driver on his father's policy, but not Treva's.

Cody was seventeen when Treva applied for the Omni policy. She stated on her application that there were no "residents of [her] household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)." (*Id.* at 114.) About two weeks after Omni was notified of the collision, Treva told Omni that Cody lived with his father and was at her home only on the weekend.

Omni paid Treva's property damage claim, but later sent Cody and Treva a letter indicating liability coverage might not be available because of questions about Cody's residence. Both Omni and the Poages moved for summary judgment.[2] The trial court denied Omni's motion and granted the Poages'.

## DISCUSSION AND DECISION

When reviewing a grant or denial of summary judgment our review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving

---

[2] Allstate insured Cody's father.

3

party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind. 2005). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* All evidence is construed in favor of the opposing party, and all doubts as to the existence of a material issue are resolved against the moving party. *Id.*

We find dispositive the potential application of Exclusion 15, which question in turn depends on whether Cody was a resident of Treva's household. We agree with the Poages that "the issue of Cody's coverage turns upon the scope of an exclusion, because Cody is already an insured as Treva's family member and a permissive driver." (Br. of Appellees, Lake and Tonya Poage (hereinafter "the Poage Br.") at 36.) Omni appears to so concede: "No genuine issue of material fact exists as to whether the Poages' claims for bodily injury result from the use of the vehicle by a resident of Treva Bauer's household who was not listed in the Declarations page." (Appellant's Br. at 6.)

Pursuant to the policy language, if Cody was a resident of Treva's household, Omni was entitled to summary judgment because Cody was not listed on the Declarations page. If he was not a resident of Treva's household, the Poages were entitled to summary judgment, as Cody was driving Treva's car with her permission. Because there is a genuine issue of fact as to his residency, there should have been no summary judgment.

4

1.     Waiver

The Poages first assert Omni has, for a number of reasons, "implicitly waived" or is estopped from raising every coverage issue it attempts to raise on appeal.  (Poage Br. at 14.) We decline to find waiver or estoppel.  We prefer to decide a case on the merits whenever possible.  *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004).  "Questions within the issues and before the trial court are before the appellate court, and new arguments and authorities may with strict propriety be brought forward."  *Id.* (quoting *Bielat v. Folta,* 141 Ind.App. 452, 454, 229 N.E.2d 474, 475 (1967)).

As we find potentially dispositive the issue of Treva's possible misrepresentation on her application for insurance with Omni, we must first address the Poages' allegation Omni waived that issue.  The Poages assert Omni's pleadings were not specific enough to place that issue before the trial court.[3]

---

[3]  The Poages also argue Omni waived this issue for at least two other reasons – it paid Treva's property damage claim, and it issued a letter that "assured Cody of coverage."  (Poage Br. at 23.)  We decline to find waiver on those grounds.

As for the first, the Poages cite *Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1227 (Ind. Ct. App. 1999), for the general proposition that conduct of an insurer inconsistent with an intention to rely on the requirements of the policy may amount to waiver of a defense, if it leads the insured to believe those requirements will not be insisted on.  But the Poages offer no authority to support their apparent premise that an insurer who makes a payment for any type of damage under any policy provision has necessarily waived any defense it might thereafter raise to any other claims that might arise under any other policy provisions.  We decline to find waiver.

The Poages next argue, without citation to authority, Omni waived any policy defenses by sending Cody a letter in October 2008 indicating "Cody was not insured under its policy," (Poage Br. at 22), and then, in November 2008, "issuing its November 19, 2008 letter which assured Cody of coverage."  (*Id*. at 23.)  We note initially that nothing in the November letter explicitly "assured Cody of coverage" – rather, it said Omni would do everything it could to settle the claim within the Omni policy limits.  Nor did the October letter say "Cody was not insured under [the Omni] policy" – rather, it said there was a "question whether coverage under this policy applies to this occurrence."  (App. at 234.)  The Poages assert the November letter waived any of Omni's policy defenses because it was "entirely inconsistent with Omni's position in its October 31st letter that Cody was not insured."  (Poage Br. at 22.)  As the October letter acknowledged only a "question" about coverage, we decline to find the subsequent letter "inconsistent" with it.

We must initially address the Poages' assertion that "Indiana Trial Rule 9(B) requires that a party must specifically plead the facts and circumstances giving rise to a claim of fraud *or misrepresentation*." (Poage Br. at 24) (emphasis added). That is not what Rule 9(B) says or what it means, and we admonish the Poages' counsel to refrain from so misstating our rules. The rule explicitly requires specific averment of *fraud*, but does not address, or even mention, mere misrepresentation. Nor have the Poages offered legal authority to the effect Rule 9(B) applies to allegations of mere misrepresentation in general or to insurance application misrepresentations in particular.[4]

Fraud and misrepresentation are not the same, and under the Omni policy, coverage may be denied if the insured knowingly misrepresented a material fact *or* engaged in fraudulent conduct. (Appellant's App. at 73.) Misrepresentation is but one element of fraud, either actual or constructive, and the Poages offer no authority to support their statement that the specificity requirements for pleading fraud also apply to allegations of mere misrepresentation. *See, e.g., Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998) (noting a party claiming either actual or constructive fraud must prove five elements, only one of which is that "there was a material misrepresentation of past or existing fact," (actual fraud) or representations or omissions made in violation of a duty existing by virtue of the relationship between the parties (constructive fraud)), *trans. denied*.

---

[4] This distinction appears particularly significant in the context of insurance applications. Whether the applicant intended to mislead or knew of the falsity is irrelevant. False representations concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was innocent or made with a fraudulent design. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 673 (Ind. 1997).

As the Poages have not provided the cogent argument or citation to authority our appellate rules require, we decline to address their argument on this point. *See, e.g.*, *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (App. R. 46(A)(8)(a) requires "[t]he argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities . . . relied on."), *reh'g denied*, *trans. denied*.

We accordingly proceed to consider the merits of the case before us.

2. <u>Residency</u>

The Omni policy excludes liability coverage for bodily injury resulting from the use of a vehicle by "any resident, including a **family member**, of **your** household who is not listed in the Declarations page." (Appellant's App. at 53.) The collision coverage contains a similar exclusion for loss to the covered auto when it is driven by "a resident of your household . . . not listed in the Declarations page." (*Id*. at 70.) If Cody was a resident of Treva's household, then Treva's statement on the application that there were no "residents of [her] household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)," (*id*. at 114), was a misrepresentation.

A misrepresentation on an application for an insurance policy is "material" if the fact misrepresented, had it been known to the insurer, would have reasonably entered into and influenced the insurer's decision whether to issue a policy or to charge a higher premium. *Allied Prop. & Cas. Ins. Co. v. Good*, 938 N.E.2d 227, 232 (Ind. Ct. App. 2010), *reh'g denied*, *trans. granted, opinion vacated*, *order granting trans. vacated and opinion*

7

*reinstated.* A material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option. *Id.* An insurance company has no right to rescind a policy "where it had knowledge of the facts notwithstanding the material misrepresentations, or where a reasonable person would have investigated further." *Id.* However, "the insurer may rely on representations of fact in the application without investigating their truthfulness," and has "no duty to look beneath the surface" of the representations on the application. *Id.*

The materiality of a representation or omission is a question of fact to be resolved by the factfinder unless the evidence is such that there can be no reasonable difference of opinion. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 673 (Ind. 1997). Both Omni and the Poages moved for summary judgment, but neither party directs us to designated evidence that addressed the materiality *vel non* of Treva's representation. We therefore direct the trial court on remand, if it finds Cody was a resident, to determine whether Treva's statement was material.

When, as here, the parties leave the term "resident" undefined, we apply Indiana common law to determine its meaning. *Indiana Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 304-05 (Ind. Ct. App. 2004). In determining residency status under an automobile liability insurance contract, our case law has developed a three-fold test. *Id.* To determine if someone is a resident, we consider 1) whether the claimant maintained a physical presence in the insured's home; 2) whether he had the subjective intent to reside there; and 3) the nature of his access to the insured's home and its contents. *Id.* The factfinder must consider all of

the evidence indicative of the claimant's living habits. *Id.* In insurance policies, the term "resident" is given its broad meaning in extension cases, and is construed narrowly in exclusion cases like the one before us. *Id.*

In *Imel*, a case involving a policy exclusion, liability coverage was limited by a provision that coverage "does not apply to: 'bodily injury' to 'you', and if residents of 'your' household, 'your' relatives and persons in 'your' care or in the care of 'your' resident relatives." *Id.* at 301.

In *Imel*, an eight-year-old child's parents divorced. By agreement, the child visited the father's mother and stepfather, the Imels, at their farm near Madison. The visits were twice each month and included both single day visits and overnight weekend visits. When the Imels were out of town or the mother had a family function or outing, the weekend at the Imels' farm would be skipped and the lost time would not be made up. When the child stayed at the Imels' farm, his mother typically did not attend, and the Imels were then the child's primary caregiver. During his visits the child had to abide by rules set by the Imels, who had full authority to care for him and discipline him as needed. The child brought his own clothes and favorite toys with him. When spending the night, he stayed in the Imels' guest bedroom, as did all of the Imels' guests.

We determined the child was not a resident of the Imels' household. *Id.* at 305. We first noted, with regard to the child's physical presence in the Imels' household, his status was more that of a temporary visitor rather than a resident. On the day the child was injured at the Imel farm, he lived with his mother in Hanover, Indiana, and attended school there.

9

Since the child was three years old, he had regularly visited the Imels about twice a month on weekends. There were toys in the Imels' household, but they were for the general use of all the Imels' grandchildren.

As to the child's subjective intent to reside in the Imels' household, we noted the Imels considered the mother to be the child's primary caregiver. The Imels deferred to the mother on issues of discipline and medication. All parties considered the child a resident of mother's home and considered his temporary stays at the Imels' farm nothing more than family visits.

Finally, we analyzed the nature of the child's access to the Imels' home and its contents. During his visits the child slept in the guest bedroom, which was used by all the Imels' children and grandchildren, and not exclusively by the child. Even though he had access to the parts of the house an eight-year-old child would normally have access to, he had to abide by certain rules. But, like any guest, he was free to move about the interior of the home. "In sum, considering all the factors indicative of [the child's] living habits, we conclude that frequent and prearranged visits of an eight-year-old grandchild with his paternal grandparents do not amount to a change of residency from his mother's home to his grandparents'." *Id*. at 305.

We addressed Indiana Farmers' argument the child had "a dual residency," both at his mother's and the Imels'. We acknowledged our prior holdings that for some purposes a person may have more than one residence, but noted "the case at bar involves an exclusion provision, and accordingly, the term resident should be constructed narrowly." *Id*.

10

Considering that the child was eight years old, "his primary residence is logically with his mother," and "our review of [the child's] visits to the Imel farm, in light of all the evidence designated to the trial court, does not mandate a finding of dual residency." *Id*.

We determined there were no genuine issues of material fact as to the child's residency with his mother, even though he was in the Imels' care at the time of the accident. *Id*. The child's bodily injuries were therefore not excluded from coverage under the liability provisions of Indiana Farmers' policy and summary judgment for the Imels was not error. *Id*. at 305-06.

There is, by contrast, a genuine issue of fact as to whether Cody was a "resident" of Treva's household. Cody apparently had more of a physical presence in Treva's household than did the child in *Imel*, but he did not live there full-time. His parents' custodial agreement indicated Cody would divide his time equally between his parents. He had his own bedroom at each parent's residence, and kept belongings at both places. There was evidence he subjectively considered both places his home and spent about an equal amount of time at both places.

Cody's subjective intent to reside in Treva's household is also less certain than was the child's intent in *Imel*. Omni notes Cody changed high schools when, near the time of the collision, Treva moved from Churubusco to Columbia City. But Cody used his father's address when he applied for financial aid at Ivy Tech. He also used his father's address on his driver's license and received his mail there.[5] He was a listed driver on his father's policy.

---

[5] There was evidence his high school sent mail to both addresses.

11

It appears Cody had greater access to Treva's home and its contents than did the child in *Imel*, as he had his own room and belongings both places, and at age seventeen presumably had greater access and was obliged to abide by different rules than the eight-year-old child in *Imel*.

Our application of the *Imel* factors leads us to conclude there is a genuine issue of fact as to whether Cody was a resident of Treva's home, so there is a genuine issue of material fact regarding whether he should be excluded from coverage under Treva's Omni policy. The Poages therefore should not have been granted, but Omni was properly denied, summary judgment. We accordingly reverse and remand for trial.

Reversed and remanded.

CRONE, J., and BROWN, J., concur.